DRAINAGE DISTRICT NO. 119, CLAY COUNTY, Iowa, and the Board of Supervisors of Clay County, acting on behalf of said Drainage District No. 119, Appellant,

v.

The INCORPORATED CITY OF SPENCER, Iowa, and the Iowa Department of Transportation, Appellees.

No. 60839.

Supreme Court of Iowa.

June 28, 1978.

Greer, Hoover, Nelson, Montgomery & Barry, Spencer, for appellant.

Mack, Hansen & Gadd, Storm Lake, for appellee City of Spencer.

Asher E. Schroeder, Sp. Asst. Atty. Gen., Ames, for appellee Iowa Dept. of Transp.

Considered by MOORE, C. J., and MASON,* RAWLINGS, UHLENHOPP and REYNOLDSON, JJ.

MASON, Justice (Serving by special assignment).

Plaintiff, Drainage District No. 119 of Clay County and the Board of Supervisors of Clay County acting on behalf of said Drainage District No. 119, appeals from the trial court's ruling sustaining defendants' motion for summary judgment on the ground plaintiff was not entitled to any relief as a matter of law.

Plaintiff instituted an action seeking declaratory relief against the City of Spencer

* Serving after June 14, 1978 by special assignment.

(City) and the Iowa Department of Transportation (DOT). Plaintiff had alleged that defendants had each refused to pay the assessments incurred for the construction of a culvert crossing at Fourth Avenue West in the vicinity of 30th Street North and a culvert crossing at North Grand Avenue, also known as U.S. Highways 18 and 71, all within the city limits of Spencer and for the area assessments incurred at these crossings.

Plaintiff asked the court to determine the obligations and duties of the City and DOT to pay for the construction of the culvert crossings and area assessments.

After plaintiff's petition, defendants' answers, and plaintiff's amendment to its petition and reply to defendants' answers had been filed, the parties entered into a stipulation of facts which plaintiff attached to its motion for summary judgment. Prior to entry of a ruling on this motion the parties amended the stipulation. After the motion was dismissed by Judge Andreasen, defendants filed motion for summary judgment. Judge Underwood sustained the motion and dismissed plaintiff's petition. Plaintiff's appeal is from Judge Underwood's sustention of the motion and dismissal of its petition.

The underlying facts here are included in the stipulation entered into by the parties. This stipulation was as follows:

"COME NOW all of the parties in the above entitled case and hereby do stipulate and agree that the following is a true and accurate set of facts which has occurred in the above entitled case to be submitted to the Court in lieu of taking testimony in the same:

"On November 9, 1970 the Board of Supervisors of Clay County, Iowa accepted a Petition for the establishment of Drainage District No. 119 and appointed an engineer to make a preliminary survey and report (Exhibit 1). The engineer filed his report on March 21, 1972 recommending establishment of said District (Exhibit 2). April 27, 1972 at 2:30 o'clock P.M. was set as a time for an informal hearing and discussion on the proposed establishment of Drainage District No. 119 (Exhibit 3). At the informal hearing the Board of Supervisors set July 10, 1972 and 10:00 o'clock A.M. as the time for formal hearing on establishment of Drainage District No. 119. All appropriate parties were duly notified of said hearing for the establishment of the District. The Iowa State Highway Commission filed an objection to assessments against primary Highway No. 71 of the Drainage District (Exhibit 4). The City of Spencer did not file an objection. On November 6, 1973 the Iowa State Highway Commission withdrew its objection to the establishment of the Drainage District stating that the construction was within the City of Spencer and therefore the Highway Commission would not be involved and therefore, did not object (Exhibit 5).

"The July 10, 1972 hearing was held and continued after a lengthy discussion. At this meeting there were two officials of the City of Spencer present, Harold M. Sunday, Director of Public Works, and C. E. Page, Mayor (Exhibit 6). After several additional continuations of the hearing the Drainage District No. 119 of Clay County was duly organized and formally established on February 8, 1974 (Exhibit 7).

"The Drainage District consists of approximately 1,060 acres and the southern portion of said District which is the area where the assessments are in question is within the City limits of Spencer. Drainage facilities which were installed in said District in the area within the city limits of Spencer include a bridge or large culvert under Highway No. 71 at which point Highway No. 71 and 18 are within the corporate limits of the City of Spencer and crossing of Fourth Avenue and 30th Street. The City of Spencer annexed this area in 1967. The area where the tile drain crosses under Highways No. 71 and 18 is approximately one mile south of the north corporate limits of the City of Spencer.

"On September 19, 1974 the City of Spencer accepted service of a notice to construct culverts and right-of-way improvements under Highway No. 71 and 18 and Fourth Avenue West on North 30th Street

(Exhibit 8). The Iowa State Highway Commission was also served notice of the improvements and acceptance of service was on September 20, 1974 (Exhibit 9).

"On September 24, 1974 the Iowa State Highway Commission sent a letter to Mr. Sackett, Drainage District Attorney, enclosing the acceptance of service but reaffirming its position that it was not involved (Exhibit 10).

"On October 15, 1974 the Clay County Auditor sent both the City of Spencer and the Iowa Highway Commission a notice that bids were to be received on the construction and improvement of Drainage District No. 119 on October 29, 1974 (Exhibits 11 & 12). Said bids were let on October 29, 1974 pursuant to the notice sent to both parties.

"On October 28, 1974 the Iowa State Highway Commission sent a letter to the Auditor reaffirming its position that it was not participating in the same as the area in question was not under its jurisdiction (Exhibit 13).

"On January 30, 1975 hearing on report of the classification commission for Drainage District No. 119 was held. At that time there were two objections, one of which was from the Highway Commission (Exhibit 14). Said objection claimed the State had no jurisdiction of the property as opposed to an objection to the assessment schedule in terms of units assessed to the land in question. The Mayor of the City of Spencer was present at the hearing. He raised no objections to the assessment schedule, nor were any objections filed on behalf of the City of Spencer in regard to units assessed to the City. Said hearing was continued to consider the objection of Mr. and Mrs. Walter Kabrick which was considered to have merit.

"On February 18, 1975 the Drainage District hearing was resumed at which time all objections to the classification schedule were overruled and the classification was accepted (Exhibit 15). After acceptance of same it was ordered by the Trustees that there be a levy of assessment fixed upon the land within the District in accordance with the classification schedule of 1.5845 cents per unit.

"Notice to the State of Iowa was sent on April 7, 1975 for $377.23 for an area assessment (Exhibit 16). Notice to the City of Spencer was sent on April 7, 1975 for $323.34 for an area assessment (Exhibit 17). This assessment was paid on April 9, 1975. Notice of assessment for the Fourth Avenue and Highway No. 71 and 18 crossings was sent to the City of Spencer for the amount of $26,857.00 (Exhibit 18).

"The City of Spencer has not filed any objections during the entire proceedings of Drainage District No. 119, nor has it filed any appeals to any of the determinations of the Commissioners for Drainage District No. 119.

"The Iowa State Highway Commission has continually filed objections, but has not filed any appeal to the Commissioners' overruling said objections.

"Both parties have refused to pay said assessments, the Iowa Highway Commission claiming that they have no jurisdiction over said property and therefore have no authority to make payment for the same. The City of Spencer claiming that Highway No. 71 and 18 is under the jurisdiction of the State and said payment should be made by the Iowa Highway Commission.

"The cost of construction of said street crossing and the area assessments for the said Drainage District were as follows:

| | |
|---|---|
| Fourth Avenue West Culvert Crossing | – $ 4,521.00 |
| Area assessment for Fourth Avenue West | – 324.34 (paid) |
| North Grand Avenue and/or Highway 71 & 18 Culvert Crossing | – 22,360.00 |
| Area assessment for North Grand Avenue and/or Highway 71 & 18 | – 377.23 |

The total cost of construction of said culverts and area assessments all located in Drainage District No. 119 is $27,582.53.

"Right-of-way occupied by primary highway extensions 71 and 18 in the City of Spencer was acquired by easement by the

State of Iowa. Neither the State nor the City of Spencer claim ownership of the underlying fee.

"It is acknowledged that the assessment is specifically under Section 455.118 for costs of construction and the assessment for area benefits are not at issue in this case."

The amendment to the stipulation added the following:

"1. The Defendant Iowa Department of Transportation, formerly the Iowa State Highway Commission, had no objection to the establishment of Drainage District No. 119 nor to the construction of the drainage facility across and through 4th Avenue West and North Grand Avenue and/or Highways 71 and 18. (See Exhibit 5). The only request the Commission had was that the construction be done so as to maintain the traffic flow upon the primary extension and the drainage district did work within the district engineer from Sioux City in this regard. (See Exhibit 10).

"2. The parties hereby stipulate that all of the records and minutes of the Clay County Auditor concerning Drainage District No. 119 may be made a part of this record."

In its petition plaintiff had alleged facts included later in the stipulation. In addition it stated there was an actual controversy as to the interpretation of chapters 455 and 459, The Code, concerning which defendant had control and jurisdiction over the road or streets at the points where the construction of said culverts took place. It asked the court to decide this controversy and to determine which defendant was liable for the assessment of the costs of the culvert installations and the area assessments incurred at these crossings.

February 17, 1976, the City answered admitting most of the facts. The City denied (1) it was on notice of all the proceedings and assessments of the District, (2) it was liable to pay the assessments, (3) the DOT was liable for the assessments, and (4) there was an actual controversy.

The DOT filed its answer the same day and adopted therein the same basic argument of the City except that it admitted the City was liable for the assessments.

April 20, plaintiff amended its petition by adding the fact the City had paid its "area" assessment for Fourth Avenue West in the amount of $324.34. In the same document it replied to defendants' answers. In its reply plaintiff alleged the City was estopped to deny liability for the assessments because it did not object to any of the proceedings had or assessments made by the District. Plaintiff contended the DOT was estopped to deny liability because it had failed to appeal from overrulings of its objections.

May 19, plaintiff filed its motion for summary judgment attaching thereto the stipulation of facts as previously set out. It stated its belief there was no defense to its claim, that no material fact necessary to support its claim was in genuine dispute, and concluded it was, therefore, entitled to judgment against defendants as a matter of law.

Attached to this motion were numerous exhibits. Exhibit 2 was a report from the engineer appointed by the Board to make a preliminary survey and report. On page 6 of this report appeared the following statement:

"Inasmuch as the proposed line of crossing the primary highway, the Chicago, Milwaukee, St. Paul and Pacific Railroad right-of-way and the avenue right-of-way near the south line of Section 31, Meadow Township, is in substantially the natural water course of the outlet of the proposed drainage district, the State of Iowa for the primary highway, the railroad company and the City of Spencer for Fourth Avenue West may be expected to pay the costs of construction for the culverts through those right-of-ways in keeping with the provisions of Sections 455.119, 455.120 and 455.-121, Code of Iowa, 1971. These items (Lines Nos. 2, 3 and 4 of the foregoing cost estimate) constitute $24,800 of the total estimated cost."

May 19, the DOT filed its resistance to the motion. It denied the stipulation of

facts stated a cause of action upon which judgment against it could be entered. It also denied chapter 455, especially section 455.118, and chapter 459 allowed an area assessment against it because the improvements on the primary road were made on a part of the road located within the city limits.

May 28, the City filed its resistance. It too alleged the stipulation of facts did not state a cause of action against it upon which judgment could be entered. It stated there was no provision of the code under which it could be assessed the cost of the improvement. It maintained there was a justiciable dispute concerning the District's authority to charge it for any costs under chapters 455 and 459.

June 24 the parties amended their stipulation as set out previously.

July 12, the court through Judge Andreasen ruled on plaintiff's motion. It found the report by the Board's engineer was incorrect where it was stated the State, the railroad company and the City would pay the costs of the culverts. It held the sections quoted by the engineer applied only to railroads.

It determined that although chapter 455 did provide for payment of improvement and construction costs from either the primary or secondary road fund, section 455.118 applied only to bridges and here the construction involved a culvert. The court concluded:

" * * * In any event, there is no statutory authority for the Drainage District to assess the costs of construction of the culvert against either the City or State. There appears to be authority for the State to construct bridges (Section 455.118) and to make improvements within the City upon the primary road system, with council approval (Section 313.21,) but nowhere does the court find authority for the Drainage District to make the improvement and then assess the costs to either the State or the City."

April 19, 1977, the City filed a motion for summary judgment. In this motion it stated no genuine issue of fact was raised in the stipulation of facts. It set out the concluding portion of Judge Andreasen's ruling. It noted the time for appeal of that ruling had passed and concluded there was, therefore, no genuine dispute as to the City's responsibility for the assessments. In its memorandum of authority it contended the court, in considering the City's motion, may use an opinion of a court in a previous stage of the same case.

April 29, the DOT filed its motion for summary judgment. It also concluded judgment could not be entered against it because plaintiff had not appealed the dismissal of its motion for summary judgment.

May 20, plaintiff filed resistance to the DOT's motion. It admitted the stipulation of facts had been agreed upon. It also stated:

"2. In addition to the previous set of facts agreed to, the Plaintiff relied upon exhibit 1 and exhibit 2 which are attached hereto. Said documents show that the Plaintiff was in contact with what was then, the Iowa State Highway Commission in regard to the construction of the culverts. Said letter asked the Highway Commission if they desired to have the culverts installed with its own forces or if they wished to have the work done by the Drainage District Contractors. Exhibit 2 shows the reply of Walter Morse [the district engineer] of the Iowa State Highway Commission, requesting that the contractor for the District install the culvert crossing and further stated that the cost thereof, would be incorporated in the total Drainage District assessment of which the state would participate in and share."

Plaintiff then stated it had relied upon the representation in the letter when it made the improvements. This representation was as follows:

"We do desire to have your contractor construct or install this culvert across our highway right-of-way, and the cost thereof would be incorporated in the total drainage district assessment of which the State would participate its share."

May 20, plaintiff filed resistance to the City's motion. It again admitted its agreement to the stipulation of facts. It stated its belief either the City or the DOT was the owner of the highway at the culvert and was responsible for the maintenance, care and control of the road at the culvert and one or both of them were thereby liable for the costs of the culvert installation. It based this contention on its belief such a finding was consistent with the clear intent of chapter 455.

May 31, the court through Judge Underwood ruled granting defendants' motions. In its ruling it stated:

"The Court having now examined the pleadings, the stipulation of the parties filed on May 19, 1976, and amendment thereto filed on June 24, 1976, the Court's Ruling on plaintiff's motion for summary judgment entered by Judge J. H. Andreasen on July 12, 1976, the motions for summary judgment and the resistances thereto and being now fully advised FINDS and RULES as follows:

"1. There is no genuine issue as to any material fact and the State and the City are each entitled to a judgment as a matter of law.

"2. The parties stipulated as to the fact and Judge Andreasen considered the facts and applied the law to these facts in his ruling on plaintiff's motion for summary judgment. Judge Andreasen's ruling is the law of this case. It provides the basis for a full disposition of this case. Clearly, under Judge Andreasen's ruling the plaintiff is entitled to no relief, and both the State and the City are entitled to prevail on their motions for summary judgment.

"3. Accordingly, the State's motion for summary judgment and the City's motion for summary judgment are each hereby sustained and the defendants are entitled to a judgment dismissing plaintiff's petition and for costs."

June 29, plaintiff filed its notice of appeal from Judge Underwood's ruling and judgment dismissing its petition.

The problem presented by this appeal is whether the trial court was correct in sustaining defendants' motion for summary judgment in its entirety. This problem presents the following questions: (1) did the trial court err in finding that plaintiff was not entitled to any relief as a matter of law and (2) did the trial court err in finding there was no genuine issue as to any material fact.

I. Rule 237(c), Rules of Civil Procedure, provides in part:

" * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

█ The movant under a summary judgment motion is asserting that on the basis of the record as it then exists, there is no genuine issue as to any material fact and that he is entitled to a judgment on the merits as a matter of law. *Lloyd v. State,* 251 N.W.2d 551, 557 (Iowa 1977), citing 10 Wright and Miller, *Federal Practice and Procedure: Civil,* section 2713 and rule 237(c), R.C.P.

█ The purpose of summary judgment is to enable a judgment to be obtained promptly and without the expense of a trial when there is no genuine and material fact issue present. Movant is assigned the burden of demonstrating both the absence of any such issue and that he, as the moving party, is entitled to judgment as a matter of law. When a trial court is confronted with such motion under rule 237, R.C.P., it is required to examine, in the light most favorable to the party opposing the motion, the entire record before it including the pleadings, admissions, depositions, answers to interrogatories and affidavits, if any, to determine for itself whether any genuine issue of a material fact is generated thereby. If, upon this examination, the court determines no such issue is present, and the

movant is entitled to judgment as a matter of law, entry of summary judgment is proper. *Davis v. Comito,* 204 N.W.2d 607, 611–612 (Iowa 1973); *Daboll v. Hoden,* 222 N.W.2d 727, 731 (Iowa 1974); *Lewis v. State,* 256 N.W.2d 181, 186 (Iowa 1977); and authorities cited in these opinions.

In reviewing the grant or denial of a summary judgment motion this court is guided by the same principles utilized by a trial court in making that determination. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. *Daboll v. Hoden,* 222 N.W.2d at 734.

We call counsel's attention to the fact this court has said that an order overruling a motion for summary judgment is interlocutory. *Flynn v. Lucas County Memorial Hospital,* 203 N.W.2d 613, 614 (Iowa 1973).

II. We deem it advisable to state again the relief plaintiff was seeking in this declaratory judgment action before determining whether the trial court erred in light of the foregoing principles in finding plaintiff was not entitled to any relief as a matter of law.

Plaintiff had alleged there was an actual controversy as to the interpretation of chapters 455 and 459, The Code, concerning which defendant had control and jurisdiction over the highway and streets at the points where the culverts had been installed. It asked the court to decide the controversy and to determine which defendant was liable for the assessment of the costs of the culvert installations and the area assessments incurred at these crossings.

It was stipulated that on April 7, 1975, notice of an area assessment for $377.23 (area assessment for North Grand Avenue) was sent to the State of Iowa. The same day notice of an area assessment for $323.34 (area assessment for Fourth Avenue West) was sent to the City of Spencer. This assessment was paid April 9, 1975. Notice of assessment for the Fourth Avenue and North Grand Avenue crossings was sent to the City of Spencer for the sum of $26,857.00.

Plaintiff in written brief and argument tells us, "Drainage District No. 119 correctly assessed the cost of the above enumerated crossings and area assessments to the City of Spencer pursuant to Sections 459 et seq and 455 et seq of the 1972 [sic] Code of Iowa as Amended, and it has refused to pay said assessments except for the area assessment and Fourth Avenue West crossing assessments." However, we are unable from our examination of the record before us to verify payment by the City of the Fourth Avenue West crossing assessments. Nevertheless, in light of the briefs and arguments submitted we assume the controversy involves only the North Grand Avenue culvert crossing assessment and the area assessment at that crossing.

The City concedes section 459.3, The Code, provides that a city like other property owners in an area benefitted from drainage construction may be assessed a proportionate part of the expense in accordance with the benefits derived. This type of assessment is generally referred to as an area assessment. Plaintiff levied an area assessment against the City pursuant to this section and that assessment has been paid.

The City argues the disputed assessments were not treated as area assessments. The expenses incurred in constructing drainage facilities through Fourth Avenue West and North Grand Avenue were not treated as costs of the drainage project to be apportioned among the property owners in the area benefitted. The expenses were considered a cost to be paid in full by the governmental unit having control or jurisdiction over the roads designated.

In its written brief and argument DOT directs its response to the "actual" assessment of $377.23 for the North Grand Avenue area assessment and to the "surmised" assessment of $22,360.00 for the culvert crossing assessment at that point. DOT argues that at no time had plaintiff ever assessed or attempted to assess any costs of a culvert crossing on North Grand Avenue against it. DOT insists that at the most

plaintiff had stated in its petition that in the event the City was not responsible for payment of the North Grand Avenue culvert crossing assessment then the Department of Transportation should be held responsible.

As we understand plaintiff's position it maintains the governmental body having jurisdiction and control of a road must pay for the cost of constructing a drainage facility through the same.

III. The first question to be answered in the case before us is whether there was any statutory basis for plaintiff to assess the costs of construction of the culvert in question against the City.

Preliminarily, we must determine whether the City had jurisdiction over Highways 18 and 71 at the point of the culvert installation.

Section 389.1 of the 1971 and 1973 Codes provided:

"*Cities and towns shall have power to* establish, lay off, open, widen, straighten, narrow, vacate, extend, *improve, and repair* streets, *highways*, avenues, alleys, public grounds, parks and playgrounds, wharves, landings, and market places within their limits." (Emphasis supplied). Chapter 391 of the same codes provided for a city's exercise of power to make street improvements and construct sewers. It defined streets to include highways. Section 391.-1(3), The Code, 1971 and 1973. See also section 391A.1(7), The Code, 1971 and 1973.

These sections apparently provided for jurisdiction by cities over highways within their boundaries. Other sections of the two codes provided support for the conclusion the City had jurisdiction over the primary road extension of Highways 18 and 71.

Chapter 306 of the 1971 and 1973 Codes divided the highways of the state into four types: (1) the primary road system consisting of those main market roads and highway traffic arteries, outside of cities and towns, which had been designated as primary roads under section 313.2 or which might thereafter be so designated by law; (2) the institutional road system; (3) the

secondary road system consisting of all public highways, outside of cities and towns, except primary, institutional and state park roads; and (4) the state park road system. Section 306.2, The Code, 1971 and 1973.

Although chapter 306 divided municipal roads into arterial, collector and service road systems, the chapter did not place such roads within any of the four systems defined.

Section 306.4, The Code 1971 and 1973, placed jurisdiction over each of the four types of roads but did not place jurisdiction over municipal roads or primary road extensions. It is apparent the legislature felt it did not need to place jurisdiction over such roads in this chapter because it had provided for it in chapter 389.

This jurisdictional question becomes important in light of changes made near the date the construction costs and area assessments were made. Effective July 1, 1975, the legislature changed jurisdiction over extensions of primary roads by repealing and enacting a substitute for sections 306.3 and 306.4, The Code, 1973. See 1974 Regular Session, Sixty-fifth General Assembly, chapter 1177, sections 4 and 5.

Section 306.3 as amended and as it appeared in the 1975 Code provided:

"* * *

"2. 'Primary roads' or 'primary road system' means those roads and streets, both inside and outside the boundaries of municipalities, classified under section 306.1 as freeway-expressway, arterial and arterial connector.

"* * *

"7. 'Municipal street system' means those streets within municipalities classified as trunk, trunk collector, municipal arterial, municipal collector, municipal service and municipal alleys under section 306.1."

Section 306.4 as amended and as it appeared in the 1975 Code provided:

"* * *

"3. Jurisdiction and control over the municipal street system shall be vested in the governing bodies of each municipality; *ex-*

*cept that the department and the municipal governing body shall exercise concurrent jurisdiction over the municipal extensions of primary roads in all municipalities.* The parties exercising concurrent jurisdiction shall enter into agreements with each other as to the kind and type of construction, reconstruction, repair and maintenance and the division of costs thereof." (Emphasis supplied).

The importance of this question of jurisdiction and the change in jurisdiction becomes apparent in light of plaintiff's argument on appeal. Plaintiff contends the "* * * entire intent of the applicable drainage and road statutes is that the governmental body which has jurisdiction and control of a road, street, or highway must pay for the maintenance and cost of construction of the same." It cites the following sections of what it refers to as the Code of 1972 in support of its contention: sections 465.23, 455.118, 455.50, 459.3.

We have carefully studied these sections of the 1971 and 1973 Codes and have found they do indeed support the contention urged by plaintiff. However, this finding is of little value because it does not get to the real issue here. What plaintiff really needed to show was some statutory basis for authority to assess the City directly for the costs of the culvert construction. The cited statutes do not provide such a statutory basis.

■ Section 465.23 provided in pertinent part for the governing body with jurisdiction over a highway to pay for the costs of material and labor in installing a tile line or drainage ditch across the highway. This statute, however, is only applicable when the tile line or drainage ditch on an individual's land must be projected across the right of way to a suitable outlet. It is not applicable to the situation we have before us involving a drainage district.

■ Section 455.118 does not provide the necessary statutory basis since it deals with secondary and primary roads and not with extensions of primary roads.

■ Neither does section 455.50 provide the statutory basis. This section dealt in pertinent part only with area assessments against primary highways and state owned lands.

■ Although the City had jurisdiction of the point on Highways 18 and 71 at the culvert crossing at the time material in this lawsuit, there was no statutory authority at the time for plaintiff to assess the costs of the culvert installation against the City.

There remains the question whether plaintiff had authority to assess the City for the benefits derived from the drainage construction in the area of the crossing since in its prayer for relief plaintiff had asked for the cost of the area assessment at the culvert crossing on Highways 18 and 71.

Section 459.3 provided in part:

"When the streets, * * * of any incorporated town or city, * * * so included within a levee or drainage district, will be beneficially affected by the construction of any improvement in such district, it shall be the duty of the commissioners appointed to classify and assess benefits to estimate and return in their report the percentage and assessment of benefits to such streets, * * * and notice thereof shall be served upon the clerk of such incorporated town or city, irrespective of the form of government, * * * *."

Under a proper record this statute might well be relied on as support for a claim against a city for an assessment for benefits derived from the construction of a drainage district.

In determining whether the case before us presents a proper record for application of this statute we must decide whether there was any statutory basis at the time material to this action which allowed the DOT to share jurisdiction with the City or to usurp the City's jurisdiction over that part of Highways 18 and 71 which was within the city limits of Spencer.

Earlier in this division we have referred to the changes in jurisdiction over primary highways from city jurisdiction to concurrent jurisdiction between a city and a state

highway commission (later the DOT). However, as pointed out, these changes became effective July 1, 1975, and do not aid plaintiff here in seeking enforcement of an assessment attempted to be levied prior to that date.

Plaintiff raises its legislative intent argument here too. It relies upon the same statutes previously mentioned and adds to them sections 313.21 and 313.27.

Section 313.21 did not provide for concurrent jurisdiction or usurpation of jurisdiction unless the city council agreed. This section provided:

"The state highway commission is hereby given authority, subject to the approval of the council, to construct, reconstruct, improve and maintain extensions of the primary road system within any city or town * * * ."

Here none of the parties alleged any such approval by Spencer's city council. Such approval will not be assumed and, consequently, section 313.21 is inapplicable to the case now before us.

Section 313.27 provided:

"The state highway commission may construct or aid in the construction, and may maintain bridges, viaducts and railroad grade crossing eliminations on primary road extensions in cities and towns."

■ Unless the term "bridges" includes culverts section 313.27 is inapplicable to the case before us. This term is not defined in chapter 313 so we must look elsewhere for a definition of it.

Our research indicates the term bridge does not include a culvert. See 5A Words and Phrases, Bridge, pp. 364–365 and cases cited therein. Other sections of the Code provide support for this conclusion. See sections 309.73–309.79. We find section 313.27 is not applicable to the present case.

Much of what we have said earlier about sections 465.23 and 455.118 is applicable here. The last section relied on by plaintiff for support for its position is 455.50. None of these statutes provide for the DOT (or its predecessor state highway commission) to

usurp or share in this jurisdiction and, consequently, the DOT could not be made liable under section 455.50 for the area assessment on Highways 18 and 71 culvert installation.

■ Under this record we find no statutory authority which would allow the DOT to share jurisdiction with the City or to usurp the City's jurisdiction over that part of Highways 18 and 71 which was within the city limits of Spencer. Consequently, section 459.3 furnishes a statutory basis as support for a claim against the City of Spencer for an assessment for benefits derived from the construction of the drainage district.

Although there appears no genuine issue as to any material fact on the basis of the record as it existed at the time of the City's motion, it is our view the City failed to sustain its burden of establishing that it was entitled to judgment as a matter of law on the claim of plaintiff for an assessment for the benefits derived from the construction of the drainage district at the point on North Grand Avenue. The trial court erred in holding otherwise.

■ In light of our conclusion that there was no statutory authority at the time for plaintiff to assess the costs of the culvert installation against the City plaintiff's assertion in its reply to the City's answer that the City was estopped to deny liability for the cost of the culvert installation since it did not object to any of the proceedings had or assessments made by the district is without merit.

■ IV. We consider next the question whether there was any statutory basis authorizing plaintiff to assess the cost of the culvert installation on North Grand Avenue against the DOT.

In response to this question we first point out that earlier in this opinion we determined that at the time material to this lawsuit DOT did not have jurisdiction and control of Highways 18 and 71 within the City of Spencer at the point where the drainage crossing was constructed. Those statutes which might be relied upon as giv-

ing DOT concurrent jurisdiction over the highways at that point did not become effective until July 1, 1975. Thus, plaintiff's contention that the "entire intent of the applicable drainage and road statutes is that the governmental body which has jurisdiction and control of a road, street, or highway must pay for the maintenance and cost of construction of the same" is without merit.

In the second place, it is our view that neither the statutes cited by plaintiff nor those disclosed by our own independent research provide any basis for plaintiff to assess the cost of construction of the culvert against DOT.

Plaintiff contends it relied upon the representations made by the DOT's engineer that the DOT would share in the costs of culvert installation. This contention is without merit. Plaintiff could not rely upon representations made by the engineer when there was no statutory basis for liability. It was charged with knowledge of the law and could not ignore the plain meaning of that law.

In our opinion DOT sustained its burden of demonstrating both the absence of any genuine issue as to any material fact and that it was entitled to judgment as a matter of law. The trial court was correct in sustaining DOT's motion for summary judgment.

With directions to the trial court to proceed in accordance with the Rules of Civil Procedure in regard to plaintiff's claim against the City for the area benefit assessment at the North Grand Avenue installation, the case is therefore—Affirmed in part and reversed in part and remanded with directions. Cost of appeal taxed to appellant.