**Joseph KNOSBY a/k/a Joe Knosby and Lila Knosby, Plaintiffs-Appellants,**

v.

**FIRST IOWA STATE BANK, An Iowa Corporation, and Goode Elevator, Inc., Defendants-Appellees.**

**No. 85-1031.**

Court of Appeals of Iowa.

June 4, 1986.

P.F. Elgin, of Elgin, Hoyman, Clogg & Patin, Indianola, for plaintiffs-appellants.

John A. Pabst, of Pabst Law Firm, Albia, for defendants-appellees.

Considered by SNELL, P.J., and SCHLEGEL and SACKETT, JJ.

SNELL, Presiding Judge.

Plaintiffs Joe and Lila Knosby are the owners of a 480-acre tract of land in Monroe County. On October 15, 1982, they leased this land to Patrick Riordan from October 15, 1982, until January 1, 1990. The written lease agreement provides in pertinent part:

> 4. Tenant agrees to provide to the Landlord a first lien on all crops grown on the premises to the amount of the interest of the Tenant.

The land was placed in the federal government's 1983 Payment In Kind Program (hereinafter PIK). On February 10, 1983, Joe Knosby signed an ASCS form stating that he claimed a zero percent share of and zero percent payments from the PIK proceeds.

On April 6, 1983, Riordan signed an agricultural security agreement assigning the PIK proceeds to the First Iowa State Bank. The bank filed a financing statement evidencing this assignment with the Secretary of State on April 6.

No corn was planted on the leased tract in 1983. The PIK entitlement was 5,963.53 bushels of corn. Goode Elevator, Inc. warehoused the PIK corn. On November 1, 1983, a check for $12,655.91 from Goode Seed & Feed Co. was given to First Iowa State Bank and credited to the balance due on Riordan's loan. Checks for $2,922.67 and $2,363.44 from Goode Seed & Feed Co. were also credited on November 4, 1983, to Riordan's indebtedness. These deposits constitute the proceeds from the sale of Riordan's entire PIK entitlement.

Riordan failed to make his November 1983 lease payment. On May 25, 1984, Knosbys filed the present petition against defendant First Iowa State Bank and defendant Goode Elevator, Inc. claiming priority with regard to the 1983 PIK proceeds by virtue of a landlord's lien, relying on both the aforecited provision of the written lease and Iowa Code section 570.2 (1985).

The district court granted summary judgment in favor of defendants and dismissed the Knosbys' petition. The court concluded that a landlord's lien applies only

to crops grown on the landlord's property, not to proceeds from the sale of PIK corn. The court also concluded that the Knosbys' failure to demand an assignment of PIK proceeds, together with Joe Knosby's written release of any interest in PIK proceeds, barred the Knosbys from now asserting a lien. For these reasons, the court held that the bank's interest in the PIK proceeds had priority over any interest held by the Knosbys.

The Knosbys have appealed this summary judgment, contending that the district court erred in finding that the bank's security interest in the PIK proceeds had priority over their landlord's lien. The Knosbys argue that because the PIK corn was intended by the federal government to be equal to the historical average of corn grown on the land placed in the program, it served as a substitute for growing crops. Therefore, they claim that the PIK corn is equivalent to growing crops for purposes of their landlord's lien.

The general principles governing our review of the trial court's grant of a motion for summary judgment are well established.

> Summary judgment is proper when there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). In reviewing the grant of a summary judgment motion, we must determine whether a genuine issue of material fact exists and whether the law was correctly applied. *Adam v. Mt. Pleasant Bank & Trust Co.*, 355 N.W.2d 868, 872 (Iowa 1984). In *Daboll v. Hoden*, 222 N.W.2d 727 (Iowa 1974), the Iowa Supreme Court said:
>
> > The purpose of the rule is to avoid useless trials. Where there is no genuine issue of fact to be decided, the party with a just cause should be able to obtain a judgment promptly and without the expense and delay of a trial. [citations] In ruling on a motion for summary judgment, the court's function is to determine whether such

a genuine issue exists, not to decide the merits of one which does.

*Id.* at 731.

> In order to rule upon such motion, the court must examine the entire record before it, including the pleadings, admissions, depositions, answers to interrogatories, and affidavits, if any. *Drainage Dist. No. 119 v. Incorporated City of Spencer*, 268 N.W.2d 493, 499 (Iowa 1978). The burden to show the absence of any genuine issue of material fact is . upon the moving party. The record is viewed in the light most favorable to the opposing party. *Swets Motor Sales, Inc. v. Pruisner*, 236 N.W.2d 299, 304 (Iowa 1975). However, to successfully resist a motion for summary judgment, the resisting party must set forth specific evidentiary facts showing the existence of a genuine issue of material fact. *Liska v. First Nat. Bank*, 310 N.W.2d 531, 534 (Iowa Ct.App.1981). He cannot rest on the mere allegations or denials of the pleadings. *Id.;* Iowa R.Civ.P. 237(c).

*Becker v. Star Auto, Inc.*, 376 N.W.2d 645, 646-47 (Iowa Ct.App.1985).

> Iowa Code section 570.1 (1985) provides: A landlord shall have a lien for the rent upon all *crops grown upon the leased premises* and upon any other personal property of the tenant which has been used or kept thereon and which is not exempt from execution.

(emphasis added). Likewise, the written lease in the case at bar states that the Knosbys' lien covers "all crops grown on the premises."

Generally, a landlord's lien covering crops raised upon the leased premises is given priority with respect to consensual security interests given by the lessee after the landlord's lien has attached. 13 Hart, *Agricultural Law* § 121.05[2][i] at 121–200 (1985). However, by the express terms of section 570.1 the landlord's lien on crops extends only to those grown on the leased premises.

The word "crop" refers to products of the harvest; such products of the soil as are annually planted, severed, and saved.

In its more general signification, it means all products of the soil that are grown and raised annually and gathered during a single season. Black's Law Dictionary 449–450 (rev. 4th ed. 1968).

"Grow" means (1) to come into being or be produced naturally: spring up, sprout; (2) to exist as living vegetation. "Grown" means having completed its growth; fully developed; mature. Webster's New World Dictionary 619 (2d Coll.Ed.1974).

One hundred years ago, the Iowa Supreme Court considered whether the statutory lien applied to a sub-tenant farming the land.

> The lien attached to all crops grown upon the demised premises. It can make no difference that they were grown by a sub-tenant; for the question whether the lien attaches to them does not depend upon whether they were grown by the tenant, but upon whether they were grown upon the demised premises. The language of the provision is clear and explicit. There is no room for construction.

*Houghton v. Bauer*, 70 Iowa 314, 315, 30 N.W. 577 (1886).

The undisputed facts in this case show that the payments received by First Iowa State Bank were from warehouse receipts from the sale of Riordan's PIK entitlement. This PIK corn was not grown upon the leased premises and constituted personal property of Riordan which he was entitled to assign at will. Furthermore, it is apparent that the assignment was executed in accordance with the federal regulations governing the assignment of PIK proceeds. *See* 7 C.F.R. § 709.4, § 713.113, § 770.6(e) (1985).

We can only conclude that the Knosbys' landlord's lien gives them no entitlement to the PIK corn or the proceeds from its sale. Therefore, the Knosbys failed to raise a genuine issue of material fact as to priority of liens. The district court properly granted summary judgment in favor of First Iowa State Bank.

AFFIRMED.

SCHLEGEL, J., concurs.

SACKETT, J., specially concurs.

SACKETT, Judge (specially concurring).

I concur with the majority solely because I find the landlord released any claim against the proceeds in signing the February 10, 1983 release.