In Re KEVIN W. EMERICK FARMS, INC., Debtor.

In re Kevin W. EMERICK and Sherry Ann Emerick, Debtors.

In re SIMON KENTON FARMS, INC., Debtor.

Kevin W. EMERICK; Sherry Ann Emerick; Kevin W. Emerick Farms, Inc., an Illinois Corporation; and Simon Kenton Farms, Inc., an Illinois Corporation, for the use of Giertz Brothers; Hennenfent Trust; Ray and Mary Hipple; Estate of Ray Oaks, Deceased; Prudential Insurance Company of America; John Sauder; and John J. Sauder Farms, Inc., Plaintiffs,

v.

AG SERVICES OF AMERICA, INC. and Firstar Bank Burlington, N.A., Defendants.

FIRSTAR BANK BURLINGTON, N.A., Counterplaintiff,

v.

GIERTZ BROTHERS; Hennenfent Trust; Ray and Mary Hipple; Estate of Ray Oaks, Deceased; Prudential Insurance Company of America; John Sauder; and John J. Sauder Farms, Inc., Counterdefendants.

Bankruptcy Nos. 94–81957 to 94–81959. Adv. No. 95–8040.

United States Bankruptcy Court, C.D. Illinois.

Oct. 12, 1995.

Richard L. Whitman, Sr., Stansell, Whitman & Baber, Monmouth, IL, for Estate of Ray Oaks, Deceased, Monmouth Trust and Savings Bank, Trustee of the Thomas Hennenfent Trust, and Ray and Mary Hipple.

Gregg N. Grimsley, Carter & Grimsley, Peoria, IL, for Prudential Ins. Company.

Steven P. Oates, Sutkowski & Washkuhn, Peoria, IL, for John Sauder and John J. Sauder Farms.

Barry M. Barash, Galesburg, IL, for Debtors/Plaintiffs.

Robert Lindstrom, Mustain Lindstrom & Henson, Galesburg, IL, for Firstar.

Eric W. Lam, Moyer & Bergman, Cedar Rapids, IA, for AG Services.

Charles E. Covey, Peoria, IL, for Stark Agricultural Services, Inc.

R. Philip Steele, Monmouth, IL, for Giertz Brothers.

## OPINION

WILLIAM V. ALTENBERGER, Chief Judge.

The issue before this Court arises out of three separate Chapter 11 cases which have not been consolidated. All three involved debtors engaged in farming operations. The first case is that of Kevin W. Emerick and Sherry Ann Emerick (EMERICKS). The other two cases are Simon Kenton Farms, Inc. (KENTON FARMS) and Kevin W. Emerick Farms, Inc. (EMERICK FARMS). Kevin Emerick is the sole shareholder of EMERICK FARMS. Sherry Ann Emerick is the sole shareholder of KENTON FARMS. As part of the farming operations leases were entered into with the following landlords:

| Landlord |
| --- |
| Giertz Brothers ("Giertz") |
| Hennenfent Trust ("Hennenfent") |
| Ray and Mary Hipple ("Hipple") |
| Estate of Ray Oaks, Deceased ("Oaks") |
| Prudential Insurance Company of America ("Prudential") |
| John Sauder and John J. Sauder Farms, Inc. ("Sauder") |

The Debtors also borrowed money from Ag Services of America, Inc. (AG SERVICES) and Firstar Bank Burlington, N.A. (FIRSTAR), with FIRSTAR subrogating its lien against crops to AG SERVICES' lien against crops.

After the Chapter 11's were filed, the Debtors and the landlords filed this adversary proceeding against AG SERVICES and FIRSTAR to determine who had priority to the proceeds from the 1994 crop in the amount of $106,684.39, the landlords, or AG

SERVICES and FIRSTAR. FIRSTAR filed a counterclaim against the landlords, attacking the landlords' claim that their liens have priority. In response, HENNENFENT, HIPPLE, SAUDER, GIERTZ and OAKS filed motions for judgment on the pleading, and PRUDENTIAL filed a response and a motion for summary judgment. The Debtors also filed a motion for judgment on the pleadings.

The landlords assert three theories why their liens have priority. The first is based on the State of Illinois statute which provides for a landlords lien. It reads as follows:

§ 9–316. Lien upon crops. Every landlord shall have a lien upon the crops grown or growing upon the demised premises for the rent thereof, whether the same is payable wholly or in part in money or specific articles of property or products of the premises, or labor, and also for the faithful performance of the terms of the lease.

§ 9–317. Landlord's right against sublessee. In all cases when the leased premises are sublet, or the lease is assigned, the landlord shall have the same right to enforce his or her lien against the sublessee or assignee, that the landlord has against the tenant to whom the premises were leased.

735 ILCS 5/9–316 and 5/9–317. FIRSTAR contends the landlords have no liens as they entered into cash leases with either EMERICKS or KENTON FARMS, that there is no evidence of an assignment or sublease to EMERICK FARMS, and the relationship between the EMERICKS and KENTON FARMS with EMERICK FARMS is unknown. Therefore the landlords may not assert liens pursuant to § 5/9–317. FIRSTAR also contends that if the landlords' liens did arise, the landlords waived them.

Sections 5/9–316 and § 5/9–317 are clear and unambiguous. Under § 5/9–316 a landlord is given a lien on crops, and under § 5/9–317 that lien is enforceable against a sublessee or assignee to the same extent it could be enforced against the original tenant. In the context of this case, the lien against the 1994 crops can be enforced against the EMERICKS and KENTON FARMS or EMERICK FARMS. If the EMERICKS and KENTON FARMS farmed the land, § 5/9–316 creates a lien on the crop enforceable

against them. If EMERICK FARMS farmed the land, § 5/9–317 allows the landlords to proceed against EMERICK FARMS to enforce the lien created by § 5/9–316.

While this Court could not find a decision of an Illinois court on point, the Court of Appeals of Iowa, in *Knosby v. First Iowa State Bank,* 390 N.W.2d 605 (1986), in deciding whether a landlord's lien attached to PIK proceeds, stated:

> One hundred years ago, the Iowa Supreme Court considered whether the statutory lien applied to a sub-tenant farming the land.
>
>> The lien attached to all crops grown upon the demised premises. It can make no difference that they were grown by a sub-tenant; for the question whether the lien attaches to them does not depend upon whether they were grown by the tenant, but upon whether they were grown upon the demised premises. The language of the provision is clear and explicit. There is no room for construction.
>
> *Houghton v. Bauer,* 70 Iowa 314, 315, 30 N.W. 577 (1886).

The fact that there is no evidence of a written sublease or assignment is irrelevant. EMERICK FARMS farmed the land. It was a creation of the EMERICKS. Obviously it farmed the land pursuant to some form of sublet or assignment. FIRSTAR's allegations and arguments raise no facts that would take the situation out from under the provisions of § 5/9–316 and § 5/9–317. It needs to do more than merely allege that a question of fact exists as to the relationship between EMERICKS and KENTON FARMS with EMERICK FARMS. It needs to show or allege a relationship which prevents the landlords from claiming their statutory lien.

■ In order to qualify for a government farm program, Kevin Emerick and each of the landlords signed a USDA–ASCS certification of cash lease which read as follows:

### USDA—ASCS

### CERTIFICATION OF CASH LEASE

We, the undersigned, wish to participate in the 1994 Acreage Reduction Program(s) on Farm ——.

We certify that the land is rented for the 1994 crop year for cash or equivalent, and the landowner(s) listed below receive(s) *NO* share of the crop, crop production or government payments that may be earned and/or proceeds derived from said production.

I understand that an incorrect or misleading statement will result in the possible loss of all 1994 program benefits for the farm.

Landowners Signature:

Operator Signature:

FIRSTAR contends these certificates waive the landlords' lien.

■ A party will not be deemed to have waived or relinquished a right or remedy available to it under the law unless a clear and distinct manifestation of such an intent is found. *American Natl. Bank & Trust Co. v. K–Mart Corp.,* 717 F.2d 394 (7th Cir.1983); *In re Browning,* 66 B.R. 79 (S.D.Ill.1986). The parties did not present any evidence or argument to guide the Court in determining the purpose of the certificates. It would appear that it is a certificate used to verify the existence of cash leases so that the government knows who is entitled to receive the benefits of the program.[1] Nothing in the certificates waive the statutory lien given to insure the cash payments are made. In fact, another section of the regulations specifically refers to waivers of liens or encumbrances

---

1. The Federal Regulations governing the Acreage Reduction Program support this conclusion as to the purpose of the certification of cash lease. 7 CFR 1413.8 defines the "Acreage reduction program" or (ARP) to mean

> a land retirement system in which participating producers agree not to plant a specified number of acres for cotton, feed grains, rice and wheat in a program year in return for the right to obtain deficiency payments, price support loans, and other program benefits.

A "producer" is defined in 7 CFR § 1413.8 to mean

> an individual, entity, or joint operation that shares in the risk of producing the crop, and is entitled to share in the crops available for marketing from the farm, or would have shared had the crops been produced.

7 CFR § 1413.106, governing division of payments, provides, in part:

which must be obtained before products may be pledged as collateral in order to participate in a government loan program.[2]

As this Court finds for the landlords on the issue of the statutory lien, there is no need to consider the other two bases for the landlords' claim of priority.

As FIRSTAR admits it subordinated its lien to that of AG SERVICES, the balance of the crop proceeds remaining after payment of the landlords should go to AG SERVICES.

> (b)(1) For the 1994 and subsequent years, each producer's share of the farm program payment for a crop shall be based on the following:
> (i) Producers are required to provide a copy of their written lease to the county committee, and, in the absence of a written lease, must provide to the county committee the terms and conditions of any oral agreement or lease.
> (ii) A lease will be considered a cash lease if the lessor receives only a sum certain cash payment, or a fixed quantity of the crop (for example, cash, pounds, or bushels per acre), according to paragraph (b)(3) of this section.
> (iii) If a lease contains provisions that require the payment of rent on the basis of the amount of crop produced or the proceeds derived from the crop, or the interest such producer would have had if the crop had been produced, such agreement shall be considered to be share lease.
> (iv) If a lease provides for both a cash payment and/or a share of the crop or production, the county committee will determine a normal cash lease amount by crop for the area. If the guaranteed production or cash lease payment is equal to or exceeds the normal cash lease established by the county committee for the area, then the lease shall be considered to be a cash lease.
> (v) If the lease is determined to be a cash lease, the landlord is not eligible to receive disaster or deficiency payments in accordance with this part, or price support loans in accordance with part 1421 of this title, on such party of the crop.
> (vi) If the cash guaranty is less than the normal cash guaranty for the area, the lease shall be determined to be a share lease.
> (2) Deficiency payments shall be divided by one of the following rules:
> (i) According to each producer's share of the expected production of the planted program crop or the way the production would have been shared if such crop had been planted;
> (ii) According to each producer's share of planted crop or the way the crop would have been shared if the crop had been planted;
> * * *
> 7 CFR § 1413.107 sets forth provisions relating to tenants and sharecroppers, and provides, in part:

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in the Opinion entered this day, IT IS HEREBY ORDERED:

1. That as to the proceeds from the 1994 crop in the amount of $106,684.39, the Landlords have priority over Ag Services of America, Inc. and Firstar Bank Burlington,

> (a) Program payments shall not be approved for the current year if it is determined that any of the conditions specified below exist:
> (1) the landlord or operator has not given the tenants and sharecroppers on the farm an opportunity to participate in the program;
> * * *
> (3) There exists between the operator or landlord and any tenant or sharecropper, any lease, contract, agreement, or understanding required or unfairly exacted by the operator or landlord which was entered into in anticipation of participating in the program the effect of which is:
> (i) To cause the tenant or sharecropper to pay to the landlord or operator any payments earned by the person under the program,
> (ii) To change the status of any tenant or sharecropper so as to deprive the person of any payments or other right which such person would otherwise have had under the program,
> (iii) To reduce the size of the tenant's or sharecropper's producer unit, or
> (iv) To increase the rent to be paid by the tenant or decrease the share of the crop or its proceeds to be received by the sharecropper.
> (4) The landlord or operator has adopted any other scheme or device for the purpose of depriving ny tenant or sharecropper of the payments to which such person would otherwise be entitled under the program. If any of such conditions occur or are discovered after payments have been made, all or any such part of the payments as the State committee may determine shall be refunded to CCC.

2. 7 CFR § 1435.121(d) (1989) provides in part as follows:

> Waivers of liens or encumbrances on the sugar pledged as loan security to the CCC must be obtained to protect fully the interest of the CCC. A lienholder, in lieu of waiving a prior lien on sugar, may execute with CCC a Lienholder's Subordination Agreement (Form CCC0864) in which the lienholder's security interest is subordinated to the rights of the CCC. . . .

N.A., and that Ag Services has priority over Firstar.

2. That the 1994 crop proceeds shall be distributed as follows:

| Landlord | 1994 Rent Due |
|---|---|
| Prudential Insurance Company of America ("Prudential") | $ 38,000.00 |
| Giertz Brothers ("Giertz") | 7,500.00 |
| Hennenfent Trust ("Hennenfent") | 11,000.00 |
| Ray and Mary Hipple ("Hipple") | 8,500.00 |
| Estate of Ray Oaks, Deceased ("Oaks") | 6,000.00 |
| John Sauder and John J. Sauder Farms, Inc. ("Sauder") | 10,000.00 |
| Ag Services of America, Inc. | 25,684.39 |
| TOTAL | $106,684.39 |