591 F.2d 991
 7 O.S.H. Cas.(BNA) 1031, 1979 O.S.H.D. (CCH) P 23,306
W. P. MOORE, Virgil A. Hundtofte and Life Science Products
Company, a corporation, Petitioners,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION and Ray
Marshall, Secretary of Labor, Respondents.
 No. 78-1014.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 6, 1978.
Decided Feb. 1, 1979.
 
 Rufus G. Coldwell, Jr., Richmond, Va. (Robert M. White, Browder, Russell, Little, Morris & Butcher, Richmond, Va., on brief), for petitioners.
 Mark J. Lerner, U. S. Dept. of Labor, Washington, D. C. (Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol., for Occupational Safety and Health, Allen H. Feldman, Acting Counsel for Appellate Litigation, Washington, D. C., on brief), for respondents.
 Before WINTER, RUSSELL and WIDENER, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 The petitioners/appellants seek review of a decision of the Occupational Safety and Health Review Commission. This decision upheld a finding by the administrative law judge of two Citations for Serious Violations and two Citations for Wilful Violations of the Occupational Safety and Health Act[1] with a recommendation of a penalty of $16,500 against Life Science Products Company (Life Science) and the appellants W. P. Moore and Virgil A. Hundtofte individually as the managing officers and directors of Life Science. The appeal does not contest the findings and assessment of penalty against Life Science. The appellants, however, dispute their individual liability, claiming that they were not "employers" within the contemplation of the Act and thus not subject to its provisions. We affirm.
 
 
 2
 There is no dispute about the facts which gave rise to this controversy. Life Science was a Virginia corporation operating a manufacturing plant at Hopewell, Virginia, producing a dangerous pesticide known as Kepone. It is conceded that, in operating the plant, Life Science was engaged in commerce within the jurisdictional test fixed by the Act. At all times the directors and the managing officers of Life Science having "direct responsibility for working conditions affecting the safety and health" of the employees of the plant were the appellants Moore and Hundtofte. On June 1, 1975, the corporation Life Science was dissolved by operation of law under the terms of § 13.1-91, Code of Virginia, 1950, as amended, for failure to file the annual report and to pay certain franchise taxes and penalty required by law. The State Corporation Commission duly notified the registered agent of Life Science on June 3, 1975, of such dissolution by letter, in which Life Science and its directors were advised:
 
 
 3
 "1. The corporation must cease to do business and the directors must liquidate it.
 
 
 4
 "2. Any person who seeks to transact business in the name of the above-named corporation is guilty of a misdemeanor.
 
 
 5
 "3. Any person who does transact business in the name of the corporation may find himself personally liable on the contracts he purports to make in its name."
 
 
 6
 Despite such dissolution and notification, the appellants, as the responsible officers and directors of Life Science, continued the normal operations of the plant including the manufacture of the pesticide Kepone. On August 13, 1975, following the application for reinstatement by Life Science on August 11, 1975, the corporation was reinstated as provided by § 13.1-92, Code of Virginia, 1950.
 
 
 7
 In the meantime, an inspection of the plant of Life Science was conducted under the provision of the Act by compliance officers of the Department of Labor from August 11, 1975, to August 18, 1975. As a result of that inspection, the four Citations in question two for Serious Violations and two for Wilful Violations of the Act along with notification of a proposed total penalty of $16,500, were issued against both Life Science and the two individual appellants. Life Science and the appellants filed timely protests of such Citations and the penalty assessed. After such protests had been filed, the Secretary of Labor began proceedings before the Occupational Safety and Health Review Commission to establish the liability of both Life Science and the individual appellants as employers for the violations charged and the penalty assessed.[2] The primary theory on which liability of the individual employers was predicated was that, during the period Life Science was dissolved but its plant's operations were continued by the individual appellants, the latter were operating the plant as partners and as such were employers. As an additional ground for individual liability, the secretary contended the appellants so directed the activities of the corporation that they should be held liable as responsible employers for the violations of the Act.
 
 
 8
 Life Science and the appellants appeared and answered the Secretary's complaint, conceding that Life Science "was an employer engaged in a business affecting commerce and * * * subject to the requirements of the Act" but denying that the individual respondents, the appellants here, were "employers" subject to the Act. Specifically, they alleged in their answer that the dissolution of the corporation by operation of law was the result of a "clerical oversight" without the knowledge of either individual appellant and that in any event, because of the later reinstatement of the corporation's charter, Life Science was "deemed to have continued (as a valid corporation) from the date of dissolution." Accordingly, the appellants argued that any liability for the violations under the Act was solely that of Life Science and not that of themselves.
 
 
 9
 At the hearing before the administrative law judge, to whom the proceedings were referred, the appellants conceded the liability of Life Science, and contested only whether the individual appellants could be considered "employers" under the Act, liable for any violations of the Act between June 1, 1975 and August 13, 1975, the period during which Life Science's charter was under dissolution by operation of law.[3] The administrative law judge found that they were "employers," subject to the terms of the Act along with Life Science, and accordingly affirmed the violation Citations and the penalty assessed. The Commission granted discretionary review of this report of the administrative law judge and, though the only two Commissioners qualified to hear the appeal differed in their opinions on the individual liability of the appellants, they agreed on an order affirming the ruling of the administrative law judge.
 
 
 10
 As indicated, the sole question presented by the appeal relates to the liability of the appellants as managing officers and directors of Life Science for the violations of the Act arising out of the operations of the Kepone plant in the interim between the dissolution of Life Science's charter on June 1, 1975, and its reinstatement on August 13, 1975. The resolution of this issue, the parties agree, turns on the construction of the two Virginia statutes governing corporate dissolution by operation of law and the reinstatement of a corporate charter so dissolved.[4]
 
 
 11
 Section 13.1-91, Virginia Code, 1950, provides that any corporation of that State, which fails "on two successive annual dates to file the annual report required by this Act or to pay the annual registration fee or franchise tax required by law," shall be notified of its impending dissolution and, whether notice of dissolution is thereafter mailed or not, "if the corporation fails before the first day of June after the second such annual date to file the annual report or to pay the annual registration fees or franchise taxes," together with interest, "Such corporation shall be thereupon automatically dissolved as of the first day of June and its properties and affairs shall pass automatically to its directors as trustees in dissolution." (Italics added) The directors of the corporation in dissolution are charged with the duty of liquidating the corporation's "business and affairs" and, after payment of the debts of the corporation, to "distribute the remainder of its assets either in cash or in kind, among its stockholders according to their respective rights and interests." Authorization, however, is provided in Section 13.1-92, Code of Virginia, 1950, for the reinstatement of the corporation "within five years" of its automatic dissolution and, "(u)pon the entry by the Commission of an order of reinstatement, the corporate existence shall be deemed to have continued from the date of dissolution Except that reinstatement shall have no effect on any question of personal liability of the directors, officers or agents in respect of the period between dissolution and reinstatement." (Italics added)
 
 
 12
 These statutes, the interpretation of which is admittedly controlling on the issue in this case, have been given no authoritative construction by the Virginia courts on the matter of the liability of the corporate directors for debts or torts arising out of the continuance of the corporate business after dissolution by operation of law.[5] There is a diversity of opinion on the construction of similar statutes from other jurisdictions in this context. A majority appears to have construed their statutes of dissolution as imposing personal responsibility on the directors for any liabilities, whether in contract or in tort, incurred in the continued operations of the dissolved corporation's business after forfeiture of its charter.[6] This construction accords with what was the rule at common law.[7] Some courts, however, have interpreted their local forfeiture or dissolution statutes as creating such personal liability on the part of the corporate directors only if the directors knew of or participated in the continuance of the business of the dissolved corporation.[8] Others have found that statutes, providing for subsequent reinstatement of the dissolved or forfeited corporate charter, are to be construed to relate back to the date of dissolution and to validate as corporate acts all actions done in the corporate name during the period of forfeiture and to relieve the directors of any personal liability for any actions occurring in the interim period.[9] Without pressing further this contrariety of judicial opinion, it is sufficient to observe that the effect of a state reinstatement statute on the interim liability of the directors of a dissolved corporation is determined by the appropriate state's "interpretation or construction of the statute providing for the reinstatement or revival,"[10] I. e., in this case, the Virginia reinstatement statute. This is to be arrived at by a construction of the statutory language itself, if there is no judicial construction of the statute by the state's courts, as is the situation here.
 
 
 13
 It seems manifest that § 13.1-91, the Virginia corporate dissolution statute, by its terms, requires a finding of personal responsibility on the part of the corporate directors for any liability created by any normal continuance of the corporate business after dissolution. This conclusion follows from the effect of dissolution under the statute, on the corporate existence. A corporate dissolution by operation of law, under the "unique" Virginia statute, "has", as one commentator has phrased it, "the legal effect of causing a de jure dissolution (of the corporation) as opposed to a de facto dissolution"[11] because the statute, as Fletcher in his treatise on Corporations has said, in referring specifically to the Virginia statute, among others, in effect, declared "a corporation thus delinquent shall ipso facto cease to exist."[12] Accepting this construction that "under section 13.1-91 an automatic dissolution works a forfeiture of the corporate charter By operation of law thereby stripping the corporation's legal mandate to exist," it has been accurately said that, upon dissolution by operation of law under the statute, "there is no corporation at all, and any action performed by the directors or officers not looking to the dissolution of the corporation should be deemed Individual actions with concomitant individual liability therefor." (Italics in text).[13]
 
 
 14
 The logic of this statement seems inescapable, unless the subsequent reinstatement of the corporate charter under the provisions of section 13.1-92 can be said to have the effect of eliminating any previous personal liability on the part of the officers or directors. Such an application of the reinstatement statute, however, would be contrary to the rule adopted by the majority of courts in construing their respective state reinstatement statutes.[14] In fact, a number of those decisions, which have found in the reinstatement statute a warrant for relieving the directors of personal liability in the interim period have done so because of some special provision in the statute mandating such result determinative of legislative intent. Thus, in Frederick G. Krapf & Son, Inc., supra, the state reinstatement statute there involved expressly declared "that upon reinstatement of a charter all contracts and other matters done and performed by corporate officers during the time the charter was inoperative shall be validated, and the exclusive liability of the corporation."[15] Under such a statute, the court had no difficulty in finding against individual liability of the directors.
 
 
 15
 There can be no question, however, that the Virginia reinstatement statute does not relieve the directors, who have continued the corporate business, of individual liability for actions in the interim period between dissolution and reinstatement. Unlike the Delaware statute involved in Krapf, the Virginia reinstatement statute includes no language expressly relieving the directors individually of liability assumed or incurred between dissolution and reinstatement. Its language is quite clear to the point that reinstatement has "no effect on any question of personal liability of the directors." What the Virginia statute manifestly does is to make the revived corporation liable for any liabilities incurred in this interim period but it declares at the same time in unmistakable terms that reinstatement will not relieve the directors of the personal liability they have already incurred by continuing the normal operations of the corporation during dissolution.[16] For us to hold in the face of this clear language of the statute that reinstatement would immunize the directors of personal liability for actions in the interim between dissolution and reinstatement would be to nullify the plain verbiage of the statute and the manifest legislative intent.
 
 
 16
 It follows that, under our construction of the Virginia statutes, the appellants did incur personal liability as "employers" under the Act for the violations between June 1, 1975, and August 13, 1975, and for the penalty assessed because of such violations, and the subsequent reinstatement of the corporate charter did not relieve them of such liability. Since we find that the Commission did not err in grounding the liability of the appellants on a construction of the Virginia statutes, it is unnecessary for us to consider the alternative ground stated in the report of the administrative law judge for finding the appellants individually liable.
 
 
 17
 The decision of the Commission is accordingly affirmed and the petition for review is dismissed.
 
 
 
 [1]
 Occupational Safety and Health Act of 1970, 29 U.S.C. 651, Et seq
 
 
 [2]
 For a statement of the procedure to be followed in the enforcement of the Act, See Atlas Roofing Co. v. Occupational Safety & Health Comm'n (1977) 430 U.S. 442 at 444-447, 97 S.Ct. 1261, 51 L.Ed.2d 464
 
 
 [3]
 The Act defines an "employer" as "a person engaged in a business affecting commerce who has employees" and the term includes, among others, "individual(s)." 29 U.S.C. § 652(4) and (5)
 
 
 [4]
 Defense Corp. v. Lawrence Co. (1949) 336 U.S. 631, 634-5, 69 S.Ct. 762, 93 L.Ed. 931; Oklahoma Gas Co. v. Oklahoma (1927) 273 U.S. 257, 259, 47 S.Ct. 391, 71 L.Ed. 634; United States v. Polizzi (9th Cir. 1974) 500 F.2d 856, 908, Cert. denied 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820
 
 
 [5]
 In re Booth's Drug Store (W.D.Va.1937) 19 F.Supp. 95, has been construed as holding, by implication at least, that under an earlier version of § 13.1-91 (former section 3810), the directors would be personally liable under these circumstances. See, Gusky, Dissolution, Forfeiture, and Liquidation of Virginia Corporations, 12 U.Rich.L.Rev. 333 at 345, n. 45
 A distinction must be made between the temporary continuance of the corporate business as an incident to its efficient and economical liquidation and an indefinite continuance without any thought of liquidation. In the former case, the directors are acting in accordance with the mandate of the dissolution statute and incur no personal liability; in the latter case, they are acting in derogation of the dissolution statute and they do incur personal liability. See, Todd Shipyards Corp. v. Lomm (La.App.1966) 190 So.2d 125, 129, Writ refused 192 So.2d 370; United States v. Glen Upton, Inc. (W.D.Mo.1974) 378 F.Supp. 1028, 1033 (" * * * the business may have to be carried on for some time in order to protect corporate assets"); Eaton, Yale & Towne, Inc. v. Sherman Industrial Equip. Co. (E.D.Mo.1970) 316 F.Supp. 435, 443. There is no contention that the appellants continued the corporate business after dissolution as an incident to dissolution or for the purpose of protecting corporate assets. Thus, the appellants can secure no comfort from the cases which recognize a right in the directors to continue temporarily the corporate business incidental to dissolution without incurring on that account personal liability.
 
 
 [6]
 See 16A, Fletcher Cyc. Corp. (Perm.Ed.) § 8132, pp. 293-294, 19 Am.Jur.2d § 1650, pp. 1000-1001; In re Hare (D.Md.1962) 205 F.Supp. 881, 883; Norton v. Supreme Fuel Sales Co. (D.N.J.1947) 72 F.Supp. 287, 288; Trower v. Stonebraker-Zea Live Stock Co. (N.D.Okl.1937) 17 F.Supp. 687, 689; Smith v. Great Basin Grain Co. (1977) 98 Idaho 266, 561 P.2d 1299, 1313; Moore v. Rommel (1961) 233 Ark. 989, 350 S.W.2d 190, 193; Southeastern Construction Co. v. Robbins (1940) 248 Ala. 367, 27 So.2d 705, 707; Leibson v. Henry (1947) 356 Mo. 953, 204 S.W.2d 310, 316; Guilford Builders Supply Co. v. Reynolds (1959) 249 N.C. 612, 107 S.E.2d 80, 83; Riedell v. Stuart (1931) 151 Okla. 266, 2 P.2d 929, 76 A.L.R. 1469, 1476-1477, with annotation; Bulova Watch Co. v. Roberts Jewelers of Rock Hill (1962) 240 S.C. 280, 284, 125 S.E.2d 643; Ewald Iron Co. v. Commonwealth (1910) 140 Ky. 692, 131 S.W. 774, 776; Trubowitch v. Riverbank Canning Co. (1947) 30 Cal.2d 335, 182 P. 182, 188-189; Jones v. Young (1934) 115 W.Va. 225, 174 S.E. 885, 887
 
 
 [7]
 Johnson v. Helicopter & Airplane Service Corp. (D.Md.1975) 404 F.Supp. 726, 730, Remanded on other grounds 491 F.2d 510; In re Booth's Drug Store, supra (19 F.Supp. at 96)
 
 
 [8]
 Commercial Nat. Bank v. Gilinsky (1909) 142 Iowa 178, 120 N.W. 476, 478, 134 Am.St.Rep. 406; Edward Shoes, Inc. v. Orenstein (N.D.Ind.1971) 333 F.Supp. 39, 42-43
 Of course, this exception, even if admissible under the Virginia statute, would not be relevant here, since the appellants concededly both knew of and participated in the continued operation of the Kepone plant after corporate dissolution.
 
 
 [9]
 See, Frederick G. Krapf & Son, Inc. v. Gorson (Del.1968) 243 A.2d 713, 715, discussed below
 
 
 [10]
 19 Am.Jur.2d § 1652, pp. 1001-1002
 
 
 [11]
 12 U.Rich.L.Rev., supra, at 343
 
 
 [12]
 16A Fletcher Cyc. Corp. (Perm.Ed.) § 7997, at p. 57
 
 
 [13]
 12 U.Rich.L.Rev., supra, at 346
 
 
 [14]
 See Accurate Const. Co. v. Washington (D.C.App.1977) 378 A.2d 681, 684-685; Poritzky v. Wachtel (Sup.Ct.1941), 176 Misc. 633, 27 N.Y.S.2d 316; Moore v. Rommel, supra, 350 S.W.2d at 193; Clark Estate Co. v. Gentry (1951), 362 Mo. 80, 240 S.W.2d 124, 128; Van Landingham v. United Tuna Packers (1922) 189 Cal. 353, 208 P. 973, 976-980; 1480 Popham Corporation v. Fordham Bus Corporation (1941) 26 N.Y.S.2d 571, 572, 176 Misc. 508; Lents, Inc. v. Borstad (1968), 251 Or. 296, 445 P.2d 597, 599
 
 
 [15]
 243 A.2d at 715
 
 
 [16]
 See 12 U.Rich.L.Rev., supra, at 348-349