Robert D. ADAM, et al., Appellants,

v.

MT. PLEASANT BANK & TRUST CO.,
et al., and Blake Phelps, Appellee.

No. 69291.

Supreme Court of Iowa.

Sept. 19, 1984.

Rehearing Denied Oct. 15, 1984.

James P. Hoffman, Keokuk, and James Walker, Bloomington, Ill., for appellants.

G.R. Krekel of Hirsch, Link, Adams, Hoth & Krekel, Burlington, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, LARSON, and SCHULTZ, JJ.

HARRIS, Justice.

We granted further review of a decision of the court of appeals which reversed a partial summary judgment entered by the trial court in favor of defendant Blake Phelps. The facts were well stated by the court of appeals:

> The case arose out of the financial collapse of the Prairie Grain Company at Stockport, a company of which Phelps was an officer. Plaintiffs are farmers who had stored grain at the elevator and were unable to obtain its return. On appeal, plaintiffs assert that the trial court erred in granting summary judgment because (1) a creditor may attempt to 'pierce the corporate veil' of a business being run as a corporation, and (2) a genuine issue of material fact exists as to whether the corporate veil should be pierced in this case. In response, defendant Phelps asserts that (a) the 'piercing the corporate veil' theory was not raised in resistance to his motion for summary judgment so error was not preserved on that contention, and (b) the partnership theory argued by plaintiffs in trial court is not pursued on appeal and is therefore waived.

· · · · ·

Plaintiffs are one hundred and four farmers who delivered grain to the elevator which could not be returned due to shortages. They have sued the grain company, the officers and directors, two banks, an accounting firm, and the state of Iowa. Most of these claims have been disposed of in various ways, but the claim against the state of Iowa, among others, remains. *See Adam v. Mt. Pleasant Bank & Trust Co.*, 340 N.W.2d 251 (Iowa 1983). This appeal involves the portion of the case against defendant Blake Phelps, allegedly an 'owner' of the company.

Plaintiffs pleaded that Phelps and the other individual defendants 'owned and operated' Prairie Grain Company and that 'the business was owned and operated by a partnership of [the individual defendants, including Phelps].' The plaintiffs asserted that the individual defendants were 'liable for the debts of the partnership.' These allegations were denied in Phelps' answer.

On August 16, 1982, Phelps moved for summary judgment, contending that there was no genuine issue of material fact as to whether he was involved in Prairie Grain Company because he was only involved with Prairie Company, Inc., in its capacity as a legal corporation. Phelps also filed an amendment to his answer in which he denied he was a partner with the other individual defendants in a 'business known as "Prairie Grain Company" in Stockport, Iowa.' The answer stated that Prairie Grain Company, Inc., is a properly organized and authorized corporation. In resistance to this motion, plaintiffs asserted that the individual defendants were co-owners of the business, and were therefore liable as partners for the obligations of the business unless the company was properly incorporated. Plaintiffs asserted the company was not a legal corporation because of various violations of Iowa corporation law as to the operation of the corporation, such as holding annual meetings, and because the corporation's existence had expired before the

time of the relevant events. The resistance also contains allegations that Raymond Keller dominated the business, that the board of directors and shareholders never set policy, and that Raymond Keller used Prairie Grain funds for his own purposes.

The court granted the motion for summary judgment, holding that a corporation can be challenged on the ground that formalities have not been satisfied only by means of a quo warranto proceeding. The court also found that the corporate existence of Prairie Company, Inc., was properly revived by filing 'Restated Articles of Incorporation' in 1980. The motion for summary judgment of Phelps was therefore granted, and the claim against him ordered dismissed. This appeal followed.

I. The court of appeals recognized a serious preservation of error problem and resolved it in favor of plaintiffs. On appeal plaintiffs assert that Phelps can be found personally liable by piercing the corporate veil of Prairie Grain. It must be conceded that no such theory is apparent from a reading of the petition. Plaintiffs can point only to the following allegations:

1. Raymond D. Keller, Blake Phelps, Boyd Kisling, and Janet M. Keller owned and operated a grain, fertilizer, and feed business known as Prairie Grain Company in Stockport, Iowa.

2. As of August 14, 1978, if not before, the business was owned and operated by a partnership of Raymond D. Keller, Blake Phelps, Boyd Kisling, and Janet M. Keller.

. . . .

7. Defendants are liable for the debts of the partnership.

With the advent of notice pleading under Iowa R.Civ.P. 69, as amended in 1976, our pleading requirements were drastically reduced. To raise or preserve a claim, the petition need not plead ultimate facts, *Schmidt v. Wilkinson*, 340 N.W.2d 282, 283–84 (Iowa 1983), or identify a specific legal theory. *I.G.L. Racquet Club v.*

*Midstate Builders, Inc.*, 323 N.W.2d 214, 217 (Iowa 1982). Although our opinions on the question have not been unanimous, it is now well established that a petition is sufficient if it apprises the opposing party of the incident from which the claim arose and the general nature of the action. *Northwestern Nat. Bank of Sioux City v. Metro Center, Inc.*, 303 N.W.2d 395, 401 (Iowa 1981). *Northwestern Nat. Bank of Sioux City* even supports the proposition that pleading the wrong theory is not necessarily fatal. There, the cross-petitioner sought an *in rem* judgment when he should have brought an action on contract. The opposing party argued that the effect was to limit the cross-petitioner to the contract theory. We responded:

> [R]egardless of whether the judgment sought was described as 'in rem,' the real thrust of the cross-claim is clear: it asks for foreclosure of the lien and a declaration of its priority. We must view the cross-claim in a common-sense manner.

303 N.W.2d at 401 (citing Iowa R.Civ.P. 67 and 69(a)).

We cannot say, under notice pleading practice, that the claim was lost here by reason of faulty pleading.

■ II. In justifying the relaxation of strict pleading requirements, the majority in *Lamantia v. Sojka*, 298 N.W.2d 245 (Iowa 1980), relied heavily on the fact that we now have other tools with which to fairly and effectively focus on the issues:

> [R]elevant facts may be determined by discovery; issues may be narrowed by discovery, pretrial conference, or partial summary judgment; and summary judgment provides an expeditious means of disposing of sham claims.

*Id.* at 247.

A start was made on such a narrowing here. A pretrial conference was held under Iowa R.Civ.P. 136 and an order was entered compelling the parties to file in turn pretrial briefs stating the facts and legal theories relied upon. Plaintiff was to file first, defendant second, and plaintiff was to file a reply. Finally, the order stated:

> Any factual contentions, any legal contentions, any claim for relief or defense (in whole or in part) or affirmative matter not set forth in detail as provided herein shall be deemed abandoned, uncontroverted or withdrawn (as may be appropriate) in further proceedings, notwithstanding the contents of any pleadings or other papers on file herein ...

Plaintiffs filed a brief which did not further disclose the theory of recovery based on piercing the corporate veil. Defendant replied. Plaintiffs did not file a reply brief and, hence, the court did not enter an order under Iowa R.Civ.P. 138:

> The court shall make an order reciting any action taken at the conference which will control the subsequent course of the action relative to matters it includes, unless modified to prevent manifest injustice.

Accordingly, the dimensions of plaintiffs' claim were not limited by a final pretrial order. *See Kester v. Bruns*, 326 N.W.2d 279, 284 (Iowa 1983) (The pretrial order controls the subsequent course of the action unless subsequently modified to prevent manifest injustice.).

■ III. There is a quo warranto issue, on which we adopt the court of appeals opinion:

> Phelps argued, and the trial court apparently agreed, that quo warranto is the only way to challenge the corporate existence of Prairie Grain Company. Quo warranto is the appropriate remedy if a party wishes to test the legality of the corporate existence of a corporation, but only when public interests are involved. *Hearth Corp. v. C–B–R Development Co.*, 210 N.W.2d 632, 634–35 (Iowa 1973). It is not the exclusive remedy, however, 'when the challenge to corporate legality is merely a casual issue in a case involving enforcement solely of private rights which do not relate to questions of a public interest.' *Id.* at 635 (citation omitted). The theory of piercing the corporate veil is an example of the latter situation. Under this theory, plaintiffs do not

challenge the fact that the elevator was organized as a legal corporation; instead, they contend that the corporate entity may be disregarded due to particular circumstances in this case. Thus, the quo warranto remedy is neither the appropriate procedural device nor relevant to plaintiffs' theory of piercing the corporate veil.

 IV. The principles which control appellate review of summary judgment were stated in *Drainage District No. 119, Clay County v. Incorporated City of Spencer,* 268 N.W.2d 493, 499–500 (Iowa 1978):

When a trial court is confronted with such [a] motion under rule 237, R.C.P., it is required to examine, in the light most favorable to the party opposing the motion, the entire record before it including the pleadings, admissions, depositions, answers to interrogatories and affidavits, if any, to determine for itself whether any genuine issue of a material fact is generated thereby. If, upon this examination, the court determines no such issue is present, and the movant is entitled to judgment as a matter of law, entry of summary judgment is proper.

In reviewing the grant or denial of a summary judgment motion this court is guided by the same principles utilized by a trial court in making that determination. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. (citations omitted).

 We also subscribe to that part of the court of appeals opinion which outlined the law relating to the piercing of corporate veils:

The corporate veil may be pierced where the corporation is a mere shell, an alter ego of its controlling owner which served no legitimate business purpose. *See generally Northwestern Nat. Bank of Sioux City v. Metro Center, Inc.,* 303 N.W.2d 395 (Iowa 1981). Fraud is not a prerequisite for piercing the corporate veil. *Team Central, Inc. v. Teamco, Inc.,* 271 N.W.2d 914, 923 (Iowa 1978).

The factors which may be considered in determining whether a corporation is merely the alter ego of its controlling owner were set out in *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.,* 519 F.2d 634 (8th Cir. 1975). A corporation's existence may be disregarded if: '(1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the corporation, (4) the corporation is used to promote fraud or illegality, (5) corporate formalities are not followed or (6) the corporation is merely a sham.'

In this case, plaintiffs claimed that the elevator violated Iowa corporation law in various procedural and operational respects and that its officers ignored their obligations under the corporate articles and bylaws. Specifically, they allege that the stockholders never held an annual meeting, there were no board of director meetings after 1966, and the corporate books were never audited. They also allege that Phelps cooperated with a former company officer, now deceased, in personally controlling the business and in misusing corporate funds for gambling and speculation on the commodities market. We believe these allegations are sufficient to raise a fact question whether the Grain Company's corporate veil should be pierced in this case and, therefore, whether Phelps may be found personally liable. Of course, we intimate nothing regarding our view of the merits of these issues; we only hold that plaintiffs have generated a fact question with regard to their allegations.

 V. Although it does not seem to have been briefed on appeal, the court of appeals commented upon a matter that was disputed in trial court: a gap in the corporate existence of Prairie Grain. It was originally incorporated for 20 years, ending August 14, 1978, and was not reincorporated until February 7, 1980. Relying on *Kessler Distributing Co. v. Neill,* 317 N.W.2d 519, 522 (Iowa Ct.App.1982) the court of

appeals determined that the reestablishment of the corporate charter did not retroactively restore the privilege of limited liability during the gap in corporate existence. Because the question will undoubtedly arise on remand, we address it.

We can find no cases of our own on the question but other courts, interpreting various statutes, have reached differing conclusions on whether limited liability persists through a gap in corporate existence. The answer is easy under statutes which expressly spell out the answer. For example, in *Frederic G. Krapf & Son, Inc. v. Gorson*, 243 A.2d 713, 715 (Del.1968) a Delaware statute controlled. It provided that all contracts and all other matters done and performed while the corporate charter was inoperative "shall be validated, and be the exclusive liability of the corporation." *Id.* A contrasting Florida statute was involved in *Nessim v. De Loache*, 384 So.2d 1341, 1342–43 (Fla.App.1980). That statute provided that "[t]he reinstatement shall have no effect upon the personal liability upon the directors, officers, or agents of the corporation on account of actions taken during the period between dissolution and reestablishment ...." *Id.* at 1343. *But see Panax of Florida Inc. v. Publishers Service Corp.*, 472 F.Supp. 444, 446 (S.D. Fla.1979) (Because shareholders were not listed with "directors, officers, or agents" in the statute, they were not personally liable for actions taken during gap.)

The Iowa statute, section 496A.102, is silent on the subject. We should note that Iowa has two corporation Acts, chapter 491 (the old act) and chapter 496A (the new act). Prairie Grain elected on August 3, 1978, to be chartered under the new act. *See* § 496A.142.

The only reference to extension of expired corporate charters in the new act[1] appears in the first of the two paragraphs that make up section 496A.102:

> The dissolution of a corporation or the expiration of its period of duration, shall not take away or impair any remedy available to or against such corporation, its directors, officers, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution or expiration, if action or other proceeding thereon is commenced within two years after the date of such dissolution or expiration.
>
> *... If the period of duration of a corporation has expired, it may ... amend its articles of incorporation at any time within five years after the date of such expiration so as to extend its period of duration.*

The second paragraph of section 496A.102 authorizes winding up the affairs of dissolved corporations. There is no claim that the matters in this litigation qualify under the second paragraph.

In the absence of a statutory expression, the authorities are not entirely clear on the existence of limited liability during suspension after a corporate charter has expired and before it has been reinstated. One authority states:

> The personal liability of persons carrying on (as distinguished from winding up) the business depends on the applicable statutes and judicial holdings based thereon or on common-law principles and recognition of distinctions between end of corporation existence and suspension of corporate powers.

H. Hann & J. Alexander, *Laws of Corporations* § 144 at 342 (3d ed. 1983).

We think the better reasoned view was expressed in *Moore v. Occupational Safety And Health Review Comm'n*, 591 F.2d 991 (4th Cir.1979). The court there stated that, in the absence of statutory direction, a majority of jurisdictions suspend limited liability and find personal liability for occurrences during suspension of a corporate charter, notwithstanding a later reinstatement. *Id.* at 995–96.

---

1. There is a retroactive validation provision for up to three months under the old act. Iowa Code § 491.25. It is not involved here.

One authority suggests that the question turns on whether local law recognizes the suspended entity as having *de facto* status after corporate (de jure) existence has expired. 13A W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 6658 (Rev. perm. ed. 1980). If so, the answer remains the same because, under the circumstances here, we recognize no *de facto* corporate existence.

The court of appeals was correct in determining that limited liability for Prairie Grain's officers, agents, and shareholders does not exist for matters occurring during suspension of the corporate charter. The judgment of the trial court is accordingly reversed and the case remanded for further proceedings.

DECISION OF COURT OF APPEALS AFFIRMED; JUDGMENT OF DISTRICT COURT REVERSED; CASE REMANDED.