J. M. LYNNE COMPANY, INC. *v.*
PHILLIPS R. GERAGHTY ET AL.
(12958)

HEALEY, SHEA, SANTANIELLO, CALLAHAN and D. DORSEY, Js.

Argued March 6—decision released July 14, 1987

*Daniel W. Moger, Jr.,* for the appellant (named defendant).

*William F. Askinazi,* with whom, on the brief, was *Carolyn Longstreth,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. The plaintiff, J. M. Lynne Company, Inc., instituted this action against the defendants, Phillips R. Geraghty Constructor, Inc. (Geraghty Constructor or the corporation), and its president, Phillips R. Geraghty, for breach of a contract involving the purchase of wall covering. The trial court found both defendants jointly and severally liable in the amount of $26,457.66 plus interest of $7782.25. Only the named defendant, Phillips R. Geraghty (defendant), has appealed from this judgment. He claims that the court erred in: (1) concluding that he was personally liable under New York law on a debt arising out of the continuance of corporate business after the corporation had been dissolved but before the dissolution was annulled; (2) its ruling in that the effect of the court's decision was to enforce a foreign penalty; and (3) rendering judgment against him when it had also rendered judgment against Geraghty Constructor without election by the plaintiff between allegedly inconsistent claims. We find no error.

The following facts were found by the trial court. The plaintiff and Geraghty Constructor are both New York corporations, but the latter corporation maintains an office in the town of Stamford. In the fall of 1982, Geraghty Constructor entered into a contract with a

convent and an architect for the renovation of a convent in Bronx, New York. Geraghty Constructor, the general contractor on the project, subsequently contracted with the plaintiff for the purchase of wall covering to be used on the project. The plaintiff extended credit to the corporation for the purchase after investigating the corporation's credit record. The wall covering was delivered to Geraghty Constructor in February, 1983, at the contract price of $26,457.66. Evidence at trial revealed that the defendant did not object to the delivery or to invoices sent by the plaintiff regarding the purchase, but the only payment received by the plaintiff was a $10,000 check from Geraghty Constructor in April, 1983, which was returned for insufficient funds. The record reveals that at some point in the spring of 1983, conflict arose between the convent, the architect and Geraghty Constructor, and the convent refused to make certain payments to the latter party. Litigation pertaining to this dispute is currently pending in New York.

In February, 1984, the plaintiff instituted this action to recover the cost of the wall covering. The parties agreed that New York law controls their dispute. Prior to trial, it was discovered that Geraghty Constructor had been dissolved in either 1979 or 1980 for failure to pay the annual New York state franchise tax since 1976. Under New York law, this dissolution is accomplished by the secretary of state publishing a proclamation which declares that a corporation is dissolved and that its charter is forfeited. N.Y. Tax Law § 203-a (McKinney).[1] Shortly before trial, the defendant obtained

---

[1] "[N. Y. Tax Law McKinney] § 203-a. DISSOLUTION OF DELINQUENT BUSINESS CORPORATIONS

"1. On or before the last day of March, June, September or December in each calendar year, the tax commission may certify and transmit to the department of state a list containing the names of any or all such stock corporations and corporations formed for profit, other than corporations formed by or under special acts and other than banking, insurance and rail-

a certificate from the New York tax department indicating that all past due franchise taxes plus interest had been paid. The effect of this certificate under New York law was that the dissolution was annulled and the corporate status of Geraghty Constructor was restored. N.Y. Tax Law § 203-a (7).

road corporations, as have not filed reports required under this article during the period of two consecutive years next preceding the date of such certification or as have been delinquent in the payment of taxes for any two years duly assessed pursuant to this article.

"2. If the secretary of state, upon comparing the names so certified with his records, shall discover error, he may return the list to the tax commission for correction.

"3. The secretary of state shall make a proclamation under his hand and seal of office, as to the corporations whose names are included in such list as finally corrected, declaring such corporations dissolved and their charters forfeited pursuant to the provisions of this section. He shall file the original proclamation in his office and shall publish a copy thereof in the state bulletin no later than three months following receipt of the list by him.

"4. Upon the publication of such proclamation in the manner aforesaid, each corporation named therein shall be deemed dissolved without further legal proceedings.

"5. The secretary of state shall mail a copy of the state bulletin containing such proclamation to the clerk of each county in the state. The county clerk shall file the copy without charge but need not record it.

"6. The names of all corporations so dissolved shall be reserved for a period of three months immediately following the publication of the proclamation, and during such period no corporation shall be formed under a name the same as any name so reserved or so nearly resembling it as to be calculated to deceive, nor shall any foreign corporation, within such period, be authorized to do business in this state under a name the same as any name so reserved or so nearly resembling it as to be calculated to deceive.

"7. Any corporation so dissolved may file in the department of state a certificate of the tax commission that all franchise taxes, penalties and interest charges accrued against it have been paid. The filing of such certificate shall have the effect of annulling all of the proceedings theretofore taken for the dissolution of such corporation under the provisions of this section and it shall thereupon have such corporate powers, rights, duties and obligations as it had on the date of the publication of the proclamation, with the same force and effect as if such proclamation had not been made or published. The fee of the secretary of state for filing such certificate shall be fifty dollars and if it is filed later than three months after the date of publication of the proclamation the secretary of state shall collect a further sum equal to one-fortieth of one per centum of all shares with par value

The named defendant, who resides in the town of Fairfield, is the president and sole shareholder of Geraghty Constructor, and he testified at trial that he was in "100 percent control" of the corporation. He could not recall any meeting of the board of directors

and two and one-half cents for every share without par value which such corporation was authorized to have at the time of such publication. No such certificate shall be filed if the name of the corporation is the same as, or so nearly resembles as to be calculated to deceive, that of a domestic corporation formed later than three months after the publication of the proclamation of dissolution or of a foreign corporation which has obtained authority to do business in the state later than three months after such proclamation unless there is simultaneously filed in the department of state a certificate of change of name. Such certificate of change of name shall be executed in like manner as if such corporation had not been dissolved. Any corporation dissolved pursuant to this section and desiring to annul the dissolution proceedings later than three months from the date of proclamation of dissolution, may, if such name is still available, pay to the secretary of state the fees hereinbefore in this subdivision mentioned, or may submit with such payment a written application requesting the reservation of another available name, and thereupon the secretary of state shall reserve such name for a period of thirty days from the date of such payment to permit the completion of such annulment. No moneys so paid shall in any event be returned by the secretary of state.

"8. If, after the publication of such proclamation, it shall appear that the name of any corporation was erroneously included therein, the state tax commission shall so certify to the secretary of state, and the secretary of state shall make appropriate entry on the records of the department of state, which entry shall have the effect of annulling all of the proceedings theretofore taken for the dissolution of such corporation under the provisions of this section, and it shall have such corporate powers, rights, duties and obligations as it had on the date of the publication of the proclamation, with the same force and effect as if such proclamation had not been made or published.

"9. Whenever a corporation shall have complied with subdivision seven of this section, or whenever the proceeding specified in subdivision eight of this section shall have been taken, the secretary of state shall publish a notice thereof in the state advertising bulletin and shall send a copy of such bulletin to the county clerk of the county in which, according to his records, the office of the corporation is located. Such county clerk shall file such copy and make appropriate entry on his records without charge.

"10. The provisions of section twenty-nine of the general corporation law shall apply to any corporation heretofore or hereafter dissolved under this section except for those corporations governed by the business corporation law as to which section one thousand nine of such law shall apply."

or the identity of any directors with the possible exception of the attorney who had incorporated the corporation. In addition, he was unable to identify any other officers of the corporation except for his son, whom he had recently named secretary-treasurer. The defendant was unable to locate any corporate books or any other documents regarding the corporation, save a checkbook register indicating that the defendant had paid school tuitions from the corporate checkbook. At the time of trial, the trial court found that the corporation had no assets other than an account receivable for the balance of approximately $57,000 due on the renovation project, and a claim of about $300,000 "for extras."

The defendant testified at trial that the corporation was willing to pay for the purchase of the wall covering but that it lacked the funds to do so. On the basis of this and other testimony, the trial court was plainly justified in rendering judgment against Geraghty Constructor for the contract price plus interest. The plaintiff also claimed that the defendant was personally liable for the debt on the theory that the corporation was his "alter ego," or under the theory that, because the corporation had been dissolved at the time of the contract with the plaintiff, the defendant was personally liable for all contracts made in the corporation's name, even though the dissolution was subsequently annulled.

The court declined to hold the defendant personally liable under the alter ego claim because it found no evidence that the defendant had defrauded or had made misrepresentations to any party or that he had circumvented the corporate form of conducting business. The court did impose personal liability for the debt, however, on the theory that the defendant continued to conduct corporate business after the corporation had been dissolved but before its reinstatement. In reaching this

conclusion, the court relied on *Poritzky* v. *Wachtel,* 176 Misc. 633, 27 N.Y.S.2d 316 (1941), the only New York decision directly on point. The trial court also noted that although there is a diversity of opinion among courts on this issue, the majority rule is that officers may be held personally responsible for contracts made when a dissolved corporation continues to conduct business, regardless of subsequent statutory reinstatement. See, e.g., *Moore* v. *Occupational Safety & Health Review Commission,* 591 F.2d 991, 995–96 (4th Cir. 1979); *Adam* v. *Mt. Pleasant Bank & Trust Co.,* 355 N.W.2d 868, 873 (Iowa 1984); *Kessler Distributing Co.* v. *Neill,* 317 N.W.2d 519, 522 (Iowa App. 1982); 16A W. Fletcher, Cyclopedia Corporations (Perm. Ed. 1979 Rev. & 1986 Cum. Sup.) §§ 7997, 7998. Such a construction accords with the rule at common law. See, e.g., *Moore* v. *Occupational Safety & Health Review Commission,* supra, 994–95.

The defendant's first claim on appeal challenges the court's legal conclusion that under New York law he is personally liable for the debt. Specifically, he argues that the court should not have relied on *Poritzky* as representing the state of the law in New York on the question presented. Our standard for reviewing the legal conclusions of a trial court is well established. "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980).

The parties do not dispute that New York law controls this case. Under New York law, when a dissolved corporation files the certificate stating that all back franchise taxes have been paid, it has "the effect of

annulling all of the proceedings theretofore taken for the dissolution of such corporation under the provisions of this section and [the corporation] shall thereupon have such corporate powers, rights, duties and obligations as it had on the date of the publication of the proclamation, with the same force and effect as if such proclamation had not been made or published. . . ." N.Y. Tax Law § 203-a (7). The defendant initially argues that under the final clause of the quoted provision, once the certificate was filed, it was as if the dissolution had never happened. He contends, therefore, that the reinstatement of the corporation retroactively validated his prior acts performed on behalf of the corporation, thereby relieving him of personal liability. We disagree.

Once it is determined that the governing law is the law of a sister state, not only must we apply the pertinent statute of that state, "but also its construction by the highest tribunal" of that state. *Gibson* v. *Fullin,* 172 Conn. 407, 411–12, 374 A.2d 1061 (1977); see also *Breen* v. *Aetna Casualty & Surety Co.,* 153 Conn. 633, 639, 220 A.2d 254 (1966). As the trial court noted, there is no decision from the New York Court of Appeals which resolves the precise question presented here. When a decision from the highest state court is lacking, we must anticipate how that court would rule on the question presented. See *Hendrix* v. *Hendrix,* 160 Conn. 98, 107–108, 273 A.2d 890 (1970). In the making of this determination, decisions of lower courts, including trial courts, are entitled to " 'proper regard' in ascertaining the applicable state law." *Bartolotta* v. *Liberty Mutual Ins. Co.,* 411 F.2d 115, 118 (2d Cir. 1969); see also *Wilmington Trust Co.* v. *Clark,* 289 Md. 313, 320 n.4, 424 A.2d 744 (1981); *Van Wagenberg* v. *Van Wagenberg,* 241 Md. 154, 171, 215 A.2d 812, cert. denied, 385 U.S. 833, 87 S. Ct. 73, 17 L. Ed. 2d 68 (1966); *Avery* v. *Bender,* 119 Vt. 313, 330, 126 A.2d

99 (1956). It is interesting to note that the Second Circuit Court of Appeals in *Bartolotta* v. *Liberty Mutual Ins. Co.,* supra, had occasion to consider a question of Connecticut law. Noting that we had not decided the question, the Second Circuit Court of Appeals pointed out that a Connecticut Superior Court decision was the only Connecticut decision on the point and that it was "obligated to give it 'proper regard' in ascertaining the applicable state law." It regarded the Superior Court decision as "controlling" because there was "absolutely nothing to suggest that the Connecticut Supreme Court would decide otherwise . . . . " Id. We recognize, however, that such decisions are not automatically binding on this court. See, e.g., *Hendrix* v. *Hendrix,* supra, 108–109.

As the trial court noted in its memorandum, the New York Supreme Court has addressed the issue of whether a corporate officer may be held personally liable for debts incurred on behalf of a corporation which had been dissolved but which was later reinstated. In *Poritzky* v. *Wachtel,* supra, a corporation had been dissolved for failure to pay state franchise taxes, yet its president and sole shareholder continued to operate the business and placed an order for certain goods with the plaintiff. The corporation was later reinstated when the back taxes were paid; however, the corporation at the time of trial was without assets. Id., 317–18. The defendant argued that the reinstatement operated retroactively to restore the corporate entity during the entire time the obligation arose, thereby validating, ab initio, his acts as president with the result that he was not personally liable. The court, however, construed § 203-a (7) to allow the imposition of individual liability on the theory that the president had no right to engage in corporate business while the corporation was dissolved. See N.Y. Bus. Corp. Law § 1005 (a) (1).[2] The

[2] This section provides in pertinent part that a dissolved corporation "shall carry on no business except for the purpose of winding up its affairs." N.Y.

court pointed out that a contrary construction "would encourage fraud and abuse" in that "a former officer of a dissolved corporation could obtain credit and then upon subsequent discovery of the non-existence of the corporation, by merely paying arrears in franchise taxes, could shift the personal liability which the law would otherwise impose upon him, back to the corporation." *Poritzky* v. *Wachtel,* supra, 635. Such a result, the court believed, could not have been intended by the state legislature. Id.

The defendant recognizes that, if *Poritzky* v. *Wachtel,* supra, represents the law of New York, he would indeed be personally liable for the debt. His contention is that the *Poritzky* court was misguided in its decision and that the case would be decided differently if it were heard today. Several arguments are proffered in support of this claim. The defendant points out that several New York decisions since *Poritzky* v. *Wachtel,* supra, have recognized the de facto status of a dissolved corporation which continues to engage in corporate business. In *Garzo* v. *Maid of the Mist Steamboat Co.,* 303 N.Y. 516, 524, 104 N.E.2d 882 (1952), for example, the court explained that where a dissolved corporation "carries on its affairs and exercises corporate powers as before, it is a *de facto* corporation . . . and ordinarily no one but the state may question its corporate existence." See also *D & W Central Station Alarm Co.* v. *Copymasters, Inc.,* 122 Misc. 2d 453, 457, 471 N.Y.S.2d 464 (1983); *Bowditch* v. *57 Laight St. Corporation,* 111 Misc. 2d 255, 259, 443 N.Y.S.2d 785 (1981). In addition, the defendant notes that a New York federal district court recently declined to follow *Poritzky* because it believed that the case did not fairly represent New York law. See *Prentice Corporation* v. *Martin,* 624 F. Sup. 1114 (E.D.N.Y. 1986). Finally, the

Bus. Corp. Law § 1005 (a) (1) (McKinney); see also N.Y. Bus. Corp. Law §§ 1006, 1009 (McKinney).

defendant claims that *Poritzky* has never been cited in any other reported decision and that it has been the subject of scholarly criticism. See note, "Dissolution and Suspension as Remedies for Corporate Franchise Tax Delinquency: A Comparative Analysis," 41 N.Y.U. L. Rev. 602, 606–607 (1966).

We have reviewed the cases and authorities to which the defendant refers but conclude that *Poritzky* v. *Wachtel,* supra, still represents the law of New York. Contrary to the defendant's assertions, the case has been cited by at least three courts and in a scholarly treatise as illustrative of New York's position on the question presented to us. See *Moore* v. *Occupational Safety & Health Review Commission,* supra, 995 n.14; *Accurate Construction Co.* v. *Washington,* 378 A.2d 681, 685 (D.C. App. 1977); *In re Estate of Plepel,* 115 Ill. App. 3d 803, 806, 450 N.E.2d 1244 (1983); 4 F. White, New York Corporations (13th Ed. 1984) § 1006.08 (3.).[3] Moreover, the New York district court's disregard of *Poritzky* in *Prentice Corporation* v. *Martin,* supra, is critically suspect. The court based its decision in part on dicta in several New York decisions discussing the de facto status of a corporation which has been dissolved but still carries on corporate activities. *Prentice Corporation* v. *Martin,* supra, 1115–16, citing *Garzo* v. *Maid of the Mist Steamboat Co.,* supra; *D & W Central Station Alarm Co.* v. *Copymasters, Inc.,* supra; *Bowditch* v. *57 Laight St. Corporation,* supra. *Garzo* v. *Maid of the Mist Steamboat Co.,* supra, concerned whether minority shareholders of a corporation which had inadvertently allowed its corporate charter to expire, could obtain the cash value of their stock and

[3] White's treatise does note the contrary holding of *Prentice Corporation* v. *Martin,* 624 F. Sup. 1114 (E.D.N.Y. 1986), but seems to resolve the issue on the side of the court in *Poritzky* v. *Wachtel,* 176 Misc. 633, 27 N.Y.S. 2d 316 (1941). See 4 F. White, New York Corporations (13th Ed. 1984) § 1006.08 (3).

force the corporation to dissolve. The factual scenario in *Garzo* was thus entirely different from the present case. The other cases cited by the *Prentice* court focus on the liabilities and powers of the *corporation* after dissolution and not on the effect of reinstatement on *individual* liabilities which have been incurred during the period between dissolution and reinstatement.[4] A determination that the corporation is liable for such debts arguably does not preclude the corporate officer who incurred the debt on behalf of the corporation from also being held personally liable. See, e.g., *Moore* v. *Occupational Safety & Health Review Commission,* supra, 996. The *Prentice* court in fact acknowledged that the only New York decision squarely on point is *Poritzky* v. *Wachtel,* supra, yet it declined to follow that decision. But cf. *Bartolotta* v. *Liberty Mutual Ins. Co.,* supra.

The federal district court in *Prentice Corporation* v. *Martin,* supra, further buttressed its holding by noting that the purpose of the relevant New York tax statute is to collect revenue. Had the legislature intended to impose personal liability upon an individual who acts on behalf of a dissolved corporation, the court reasoned, it would have done so. Id., 1116. We recognize that some jurisdictions have imposed personal liability on the basis of explicit statutory enactments. See, e.g.,

---

[4] The court in *Prentice Corporation* v. *Martin,* 624 F. Sup. 1114 (E.D.N.Y. 1986), also relied on the case of *Sacks* v. *Anne Realty Co.,* 131 Misc. 117, 225 N.Y.S. 370 (1927). There the plaintiff instituted an action for breach of contract against the directors of a corporation which had not yet completed its organization as required by New York law. The court held that the plaintiff had no claim against the directors personally, relying on the "de facto corporation" doctrine discussed above. Id., 118–19. The *Sacks* case is easily distinguishable from *Poritzky* v. *Wachtel,* 176 Misc. 633, 27 N.Y.S.2d 316 (1941), and the present case in that in *Sacks,* the contract was entered into prior to initial incorporation and not during a period of dissolution. There is obviously a greater potential for fraud and abuse under the facts of *Poritzky* than under the facts of *Sacks* which could reasonably lead a court to decide the two cases differently.

*Moore* v. *Occupational Safety & Health Review Commission,* supra, 996; *Kessler Distributing Co.* v. *Neill,* supra, 522. What the *Prentice* court failed to note is that other jurisdictions have reached the same conclusion in the absence of any statutory directive; see, e.g., *Lents, Inc.* v. *Borstad,* 251 Or. 296, 298–99, 445 P.2d 597 (1968); and, more interestingly, some courts have declined to impose liability because of statutes mandating *that* result. See, e.g., *Frederic G. Krapf & Son, Inc.* v. *Gorson,* 243 A.2d 713, 715 (Del. 1968). We note in passing that our jurisdiction has not had the opportunity to decide this issue.

We have not been referred to nor have we found any New York statute which either expressly imposes or relieves an officer of liability for debts incurred during dissolution. Although the *Prentice* court interpreted this omission in favor of the defendant, we believe the New York Court of Appeals would interpret it otherwise. The majority of jurisdictions, as the trial court here pointed out, favor holding a person in the defendant's position individually liable; see *Moore* v. *Occupational Safety & Health Review Commission,* supra, 994; 16A W. Fletcher, supra; and this view apparently conforms with the common law rule. See *Johnson* v. *Helicopter & Airplane Services Corporation,* 404 F. Sup. 726, 730 (D. Md. 1975); *In re Booth's Drug Store,* 19 F. Sup. 95, 96 (W.D. Va. 1937). The holding of *Poritzky* therefore is in accordance with the majority view. It is logical to conclude that had the legislature believed the *Poritzky* decision to be erroneous and the majority view unsound, it would have amended N.Y. Tax Law § 203-a (7) to reflect this intent. It must be presumed, in this context, that the legislature was aware of the court's interpretation of the statute. *People* v. *Colozzo,* 54 Misc. 2d 687, 693, 283 N.Y.S.2d 409 (1967), aff'd, 32 App. Div. 2d 927, 303 N.Y.S.2d 348 (1969); see *Toolson* v. *New York Yankees, Inc.,* 346 U.S.

356, 357, 74 S. Ct. 78, 98 L. Ed. 64, reh. denied, 346 U.S. 917, 74 S. Ct. 271, 98 L. Ed. 412 (1953); *Ralston Purina Co.* v. *Board of Tax Review,* 203 Conn. 425, 439, 525 A.2d 91 (1987). The policy concerns underlying *Poritzky* of discouraging fraud and abuse are certainly legitimate considerations and are as important today as they were in 1941, the year *Poritzky* was decided.

The final argument made by the defendant against the imposition of personal liability centers around an amendment to § 203-a which became effective eight days after *Poritzky* was decided. This amendment provides that § 29 of the General Corporation law (now N.Y. Bus. Corp. Law § 1006) "shall apply to any corporation *heretofore* or *hereafter* dissolved under this section." (Emphasis added.) 1941 N.Y. Laws, c. 590, § 1. Section 29 states, inter alia, that a dissolved corporation may continue to function for the purpose of winding up its affairs and in doing so may sue or be sued. Prior to 1940, it was unclear whether § 29 applied to corporations which had been dissolved for failure to pay the state franchise tax. See *N.Y. Rayon Importing Co.* v. *United States,* 64 F. Sup. 684, 687 (Ct. Cl. 1946), rev'd in part on other grounds, 329 U.S. 654, 67 S. Ct. 601, 91 L. Ed. 577 (1947). An amendment to § 203-a, passed in 1940, specifically provided that § 29 *would* apply to corporations dissolved under the tax law. 1940 N.Y. Laws, c. 82. There was still some uncertainty, however, as to whether that amendment applied to corporations dissolved prior to 1940. The 1941 amendment, now codified as § 203-a (10), made clear that the 1940 amendment applied retroactively to corporations dissolved before 1940. See generally *N.Y. Rayon Importing Co.* v. *United States,* supra.

The defendant maintains that the 1941 amendment reflects the New York legislature's policy favoring retroactivity and in effect reiterates the "retroactive mechanics" of § 203-a. We cannot agree with this inter-

pretation. Whether a particular amendment applies retroactively is clearly an entirely different question from whether reinstatement retroactively validates the acts of corporate officers performed during dissolution and relieves them of liability. The amendment in no way either implicitly or explicitly overrules the holding of *Poritzky*. In light of the holding of *Poritzky* and its accordance with the majority view, we conclude that the trial court was legally and logically correct in holding the defendant personally liable for the debt with the plaintiff.[5] *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra, 221.

It is only necessary to discuss briefly the defendant's two remaining claims of error. He contends first that, by holding him personally liable, the court in essence imposed a penalty on a Connecticut resident to enforce a New York tax law. Connecticut courts, he argues, traditionally decline to enforce foreign penalties. *Lapinski* v. *Copacino,* 131 Conn. 119, 124, 38 A.2d 592

---

[5] The defendant also cites *Bowditch* v. *57 Laight St. Corporation,* 111 Misc. 2d 255, 259, 443 N.Y.S.2d 785 (1981), which dealt with the retroactive validation of a corporation dissolved for failure to pay franchise taxes where that corporation was accorded de facto status to permit it to exercise a valuable lease option after its nunc pro tunc reinstatement. The defendant in this case argues that *Bowditch* is not only contrary to *Poritzky* v. *Wachtel,* 176 Misc. 633, 27 N.Y.S.2d 316 (1941), but that it supports its claim that the reinstatement applies retroactively to raise the corporate shield to protect him from individual liability. We do not agree. *Bowditch* is clearly distinguishable from this case. First, the option provision was contained in the original lease which was entered into some years *before* the corporation was dissolved for nonpayment of franchise taxes; in our case the transaction involved took place after the dissolution. Second, the *Bowditch* court also suggests that the exercise of the option to buy real estate is a valuable asset and may be exercised for collection and distribution purposes. *Bowditch* v. *57 Laight St. Corporation,* supra, 258. It pointed out that dissolution "does not affect . . . the right of a corporation to collect and distribute its assets . . . ." Id. The exercise of such an option, opined the *Bowditch* court, "may be considered a significant part of winding up the affairs of the corporation." Id., citing New York Bus. Corp. Law § 1005 (a) (2) (McKinney); see N.Y. Bus. Corp. Law § 1006 (a) (McKinney). *Bowditch* does not avail the defendant.

(1944). Second, the defendant maintains that taking judgment against a disclosed principal, a corporation, is inconsistent with and precludes judgment against an officer of the corporation for the same debt. It is his position that the plaintiff should have elected between these inconsistent remedies.

We assume for the sake of argument that these issues were properly brought to the trial court's attention.[6] The memorandum of decision filed by the court, however, fails to address these two claims and the record before us is therefore incomplete with regard to them. We have previously explained that "when a party seeks . . . the inclusion in the memorandum of decision of the trial court's rulings on claims of law properly presented, he should file a motion with the trial court under Practice Book, 1978, § 3082 [now § 4051] setting forth the specific . . . claims of law he seeks to have included." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* supra, 222 n.5; see also *Barnes* v. *Barnes,* 190 Conn. 491, 493, 460 A.2d 1302 (1983). In addition, when an appeal is pending before this court, a party may file a motion in this court "the purpose of which is to complete, correct or otherwise perfect the trial court record . . . ." Practice Book § 4183; see also Practice Book § 4061. The defendant here failed to file a motion for rectification or further articulation with either this court or the trial court. It is, of course, the responsibility of the appellant to provide an adequate record for review; Practice Book § 4061; *DeMilo* v. *West Haven,* 189 Conn. 671, 681, 458 A.2d 362 (1983); "and under normal circumstances we will not remand a case to correct a deficiency the appellant should have reme-

---

[6] Apparently, the election claim was first raised during or at the conclusion of the trial, and the plaintiff argues that from a fairness standpoint, the claim should have been raised prior to trial. In addition, we note that the only mention of this claim in the record appears in the defendant's post-trial brief, not under a separate argument heading, but under the section labeled "conclusion."

died." *Carpenter* v. *Carpenter,* 188 Conn. 736, 739 n.9, 453 A.2d 1151 (1982); see also *Barnes* v. *Barnes,* supra, 494; *Scherr* v. *Scherr,* 183 Conn. 366, 368, 439 A.2d 375 (1981). We follow the lead of these decisions and therefore will not consider the defendant's two final claims of error.

There is no error.

In this opinion the other justices concurred.